270 N.J. Super. 213 (1994)
636 A.2d 1077
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JESSIE J. PARSONS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1993.
Decided January 31, 1994.
*217 Before Judges BRODY, STERN and KEEFE.
Mordecai Garelick, Assistant Deputy Public Defender, argued the cause for appellant (Zulima V. Farber, Public Defender, attorney; Mr. Garelick, of counsel and on the letter brief).
Gregory G. Waterston, Assistant Prosecutor, argued the cause for respondent (Ronald A. Epstein, Salem County Prosecutor, attorney; Mr. Waterston, on the brief).
The opinion of the court was delivered by BRODY., P.J.A.D.
Following a jury trial, defendant was convicted of third-degree aggravated assault by purposely, knowingly or recklessly causing injury to Patrolman William Madara while he was in uniform and acting in the performance of his law enforcement duties. The crime is a violation of N.J.S.A. 2C:12-1b(5)(a). The jury also found defendant guilty of two other crimes arising out of the same incident: fourth-degree purposely resisting arrest by the use of force against Patrolman Madara, a violation of N.J.S.A. 2C:29-2, and fourth-degree purposely resisting arrest by the use of force against Police Sergeant Robert Eller, Patrolman Madara's partner, also a violation of N.J.S.A. 2C:29-2. The trial judge merged the resisting arrest charges into the aggravated assault and imposed a four-year prison term. Defendant contends that the trial judge erroneously failed to answer responsively important questions posed by the jury during its deliberations respecting the elements of the crimes. We agree and reverse.
The testimony presented the jury with two versions of the manner in which the officers arrested defendant as a robbery *218 suspect.[1] One version was presented by the two arresting officers; the other by defendant.
The officers testified that they were in uniform in a marked patrol car a little after 10:00 p.m. when they received a radio dispatch to be on the lookout for someone who had fled on foot after robbing a gas station attendant. The suspect was described as a "Negro male clad in green shorts and a dark top heading southbound toward Church Street." They spotted defendant, who fit the description, running along Walnut Street not far from the gas station.
Sergeant Eller stopped the police car behind defendant and let Patrolman Madara out. The sergeant then drove ahead of defendant where he stopped the car and got out. This maneuver placed Sergeant Eller on foot in front of defendant and Patrolman Madara on foot behind him. Sergeant Eller testified that after he advised defendant that he was suspected of the robbery at the gas station, the following occurred:
Q. Did you tell him, this individual, that you were going to take him back to the gas station?
A. Yes, I did.
Q. And did you ask him, or tell him to get in the police car?
A. Yes, I did.
* * * * * * * *
Q. What happened when you told the individual to get into the police car?
A. I advised him that we were going to take him up to the Amoco Gas Station for identification purposes. I asked him to have a seat in the rear of the patrol car. And I grabbed his arm by his jacket to guide him into the patrol car.
Q. And what happened at that juncture?
A. He pulled away from me and tried to run.
* * * * * * * *
Q. Did this individual strike you in any manner?
A. Yes. I had a hold of his one arm. But with his other arm, when he tried to run he struck me with that arm, yeah.
Q. Where was Patrolman Madara during this time period?

*219 A. At this time Patrolman Madara was coming up behind the subject.
Q. And what happened when Patrolman Madara got up behind the subject?
A. He grabbed the subject from behind and the subject continued to struggle and they fell to the ground.
Q. Did you see whether or not, or could you see whether or not Mr. Parsons had struck Patrolman Madara in any manner?
A. Yes, he did, with his arm. Yes.
Q. What happened to Patrolman Madara after he was struck by Mr. Parsons?
A. The two then fell to the ground.
The sergeant acknowledged that he was not injured during the encounter with defendant.
Patrolman Madara's testimony was similar. He added the following:
Q. What did you observe happen next?
A. I observed the subject attempt to flee, attempt to run. Sergeant Eller grabbed toward the back of his coat to grab his coat and the subject struck Sergeant Eller, he struck him with his right hand. At that point I was already walking toward them. And I began to run toward them.
Q. What did you do when you got in their vicinity?
A. The only thing I could do at that point was try to take the subject into custody. I put him in what they call a bear hug from behind, from behind the subject.
Q. What happened when you put the subject in a bear hug?
A. He swung around with his left hand and struck me. And I still remained holding onto him. And we fell to the ground and I struck my elbow on the pavement.
The patrolman described his injury as a bruised right ulnar nerve that caused him to lose "feeling in my fingers, my ring finger and my small finger, for a day."
Defendant's version of the arrest was very different. He testified that he was walking on the sidewalk when a patrol car stopped ahead of him and Sergeant Eller got out. He continued:
Q. And what then happened?
A. He got out of the car, the driver's side, parked the car in the middle of the street, and he opened the back door. And as I was walking up toward, you know, the police car he made a motion where he was saying like to come toward him. So I asked the officer what seems to be the problem as I walked toward the police car. So I met Sergeant Eller at the back of the police car, when I got to the back of the police car.
Q. Was there another officer in the police car when you got to the back of the police car?

*220 A. I didn't see another officer, sir. As I got to the back of the police car Eller reached to his right side and sprayed some mace in my face.
Q. Had you done anything prior to him doing that?
A. No, sir.
Q. And what happened at that point?
A. At that point, when he sprayed mace in my face, I put my hands over my eyes like this. And it was all  mace was all up in my nose and my eyes. And he had grabbed me by my hand. By that time I felt another person grabbing me and push me to the ground. And I was on my face on the ground and they handcuffed me behind my back.
Q. Had he told you that you had done anything at that point?
A. No, sir.
The jury's questions related to the elements of the crimes of assaulting uniformed Patrolman Madara and resisting his efforts to make the arrest. The judge read the questions into the record as follows:
Madara grabbed Parsons from behind. Parsons said that he did not see Madara. The bear hug from behind by Madara and wrestling to the ground caused Madara to strike his elbow. This was not premeditated by Parsons. He was grabbed and immediately wrestled to the ground. Question: Is this resisting arrest against Madara since Parsons did not see Madara? Is this aggravated assault since it was by accident that Madara hit his elbow?
He responded by telling the jurors that they had asked "factual questions that you have to determine. I can give you the definition, the legal definition again of aggravated assault on a police officer and I can give you the legal definition of resisting arrest again, if that's what you want." And that is what he did.
We disagree with the judge's appraisal of the jury's questions. The jury did not ask factual questions. It asked two legal questions based on the factual assumptions that defendant did not see Patrolman Madara in uniform before he wrestled defendant to the ground and that the patrolman's injury was an accident because defendant did not mean to cause it. The jury's legal questions, based on those assumptions, were (1) can defendant be guilty of resisting Patrolman Madara's efforts to arrest him if he did not see that the patrolman was a law enforcement officer until after the patrolman had wrestled him to the ground and (2) can defendant be guilty of assaulting Patrolman Madara if the patrolman *221 accidently injured his elbow when he wrestled defendant to the ground.
The judge could have avoided endorsing the findings of fact embodied in the jury's questions by referring to the findings as "assumptions" made for the purpose of answering the questions. Defendant's attorney appears to have been attempting to ask the judge to treat the findings that way when the judge cut him off:
MR. RUBIN: ... I just want to say one thing. The jury is not here yet. Judge, the only thing I'd like to indicate is that I would ask the court to say to them that if they do find as a fact that it is accidental, if they find that as a conclusion of fact. [ (?)]
THE COURT: I'm not going to do that, Mr. Rubin. I'll be happy to define, to charge again aggravated assault on a police officer and resisting arrest, but I'm not going to tell them, I'm going to tell them exactly that. If they find the elements, the state has proven them, he's guilty. If they don't find the elements he's not guilty.
A question from a jury during its deliberations means that one or more jurors need help and that the matter is of sufficient importance that the jury is unable to continue its deliberations until the judge furnishes that help. An appropriate judicial response requires the judge to read the question with care to determine precisely what help is needed. Sometimes a question is direct and simple to answer. For instance, if the jurors ask to be reminded of a definition or of one or more elements of a crime, the judge may simply repeat the appropriate portion of the instructions.
Sometimes the jury wants the judge to confirm its understanding that by making certain findings of fact, it must find the defendant guilty or not guilty. In such a case, a simple "yes" or "no" may suffice. Defendant contends that is the case here, and a simple "no" to both questions would suffice. However, a careful examination of the questions makes it clear that more was needed to provide an adequate response to the jury's concerns.
The jury's first concern was whether a person may be guilty of fourth-degree resisting arrest if the person does not see that the person against whom he has used physical force or *222 violence was a law enforcement officer. N.J.S.A. 2C:29-2 provides in relevant part:
A person is guilty of a disorderly persons offense if he purposely prevents a law enforcement officer from effecting a lawful arrest, except that he is guilty of a crime of the fourth degree if he:
1. Uses or threatens to use physical force or violence against the law enforcement officer or another; ... [Emphasis added.]
To be guilty of fourth-degree resisting arrest, a defendant must have reason to know that a law enforcement officer is attempting to effect the arrest, but need not know that some other person against whom the defendant uses "physical force or violence" is also a law enforcement officer. The offense is raised to a fourth-degree crime in such a case even if the force or violence is used against someone who is not a law enforcement officer.
The jury had occasion to raise the question because of the State's effort to prosecute two offenses when there was only one. Resisting arrest on a single occasion is one offense no matter how many police officers are attempting to effect the arrest. If a person resists arrest by running away from five law enforcement officers who give chase, the person is not committing five offenses. The offense is against the criminal justice system, not against the law enforcement officer or officers individually whose attempt to effect the arrest is an element of the offense. Even though using or threatening to use physical force or violence against a law enforcement officer would raise the offense to a crime, the crime of resisting arrest is still against the system of justice, not against the officer individually. If a person uses physical force against an arresting officer, the offense against the officer individually would be an aggravated assault, N.J.S.A. 2C:12-1b(5)(a), which would not merge with resisting arrest. State v. Battle, 256 N.J. Super. 268, 283, 606 A.2d 1119 (App.Div.), certif. denied, 130 N.J. 393, 614 A.2d 616 (1992).
The judge's failure to answer responsively the jury's question regarding the charge of resisting Officer Madara's efforts to arrest defendant is rendered harmless by our holding that defendant may be convicted of only one resisting arrest. The jury's *223 question did not touch upon the elements of resisting the efforts of Sargeant Eller, whom defendant saw in uniform, to arrest him. That conviction may therefore stand.
The jury's second concern was whether defendant may be guilty of aggravated assault of a law enforcement officer who was "accidently" injured while throwing defendant to the ground to effect the arrest. N.J.S.A. 2C:12-1b(5)(a) provides in relevant part:
A person is guilty of [third-degree] aggravated assault if he:
* * * * * * * *
(5) Commits a simple assault as defined in subsection a.(1) ... of this section upon
(a) Any law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority; ...
N.J.S.A. 2C:12-1a(1) provides:
A person is guilty of [the disorderly persons offense of] assault if he:
(1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; ... [Emphasis added.]
The minimum kind of culpability that the State must prove is "recklessly," which N.J.S.A. 2C:2-2b(3) defines as follows:
A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation....
Also relevant is N.J.S.A. 2C:2-2c(1), which provides:
When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all the material elements of the offense, unless a contrary purpose plainly appears.
Reckless culpability attaches to two elements of aggravated assault that are implicated in the jury's second question. As put by the question, the issues are whether it was defendant's purpose to cause bodily injury to Patrolman Madara, i.e. whether the injury was "accidental" because defendant did not "premeditate" *224 it, and whether defendant knew at the time that the person he exposed to the risk of injury was a law enforcement officer.
Because the culpability is only reckless as to both elements, the first element would be satisfied even though it was not defendant's purpose to injure Patrolman Madara as long as it may be inferred from his conduct that he consciously disregarded a substantial and unjustifiable risk that an officer such as Patrolman Madara would sustain bodily injury while trying to arrest him. The other element would be satisfied even though defendant did not see that Patrolman Madara was in uniform as long as, given the circumstances known to him, defendant consciously disregarded a substantial and unjustifiable risk that the person holding him from behind in a bear hug was a law enforcement officer. See State v. Moll, 206 N.J. Super. 257, 502 A.2d 87 (App.Div.), certif. denied, 103 N.J. 498, 511 A.2d 670 (1986).
The trial judge's initial instructions to the jury made no reference to the evidence. The judge merely recited the elements of the crimes, including abstract definitions of the kinds of culpability that would render the conduct criminal. The jury's questions compelled the judge to relate those instructions to the evidence of this case. Simply repeating the instructions did not answer the questions. "Ordinarily, the better practice is to mold the [jury] instruction in a manner that explains the law to the jury in the context of the material facts of the case." State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988). That was not done here.
Both of the jury's questions touch upon material elements of the aggravated assault of Officer Madara: defendant's culpability and whether defendant had reason to realize that Officer Madara was a law enforcement officer when the assault allegedly occurred. Jury questions present a glimpse into a jury's deliberative process. If a question discloses that the jury needs specific help in understanding issues it must decide, particularly issues related to the elements of the crime charged, and that help is not given, we will not speculate as to whether the verdict would have been different or the same had the help been given. The error *225 undermines our confidence that the deliberative process produced a just result and the conviction must be reversed. State v. Grunow, 102 N.J. 133, 148, 506 A.2d 708 (1986). R. 2:10-2. See State v. Concepcion, supra.
The conviction of resisting Sergeant Eller's efforts to effect an arrest is affirmed. The conviction of resisting Officer Madara's efforts to effect an arrest and the conviction of aggravated assault are reversed. The charge of aggravated assault is remanded for a new trial.
NOTES
[1] The jury acquitted defendant of the robbery.