720 A.2d 376 (1998)
316 N.J. Super. 287
George F. EWING and Esther Ewing, His Wife, Plaintiffs-Appellants,
v.
Norbert J. BURKE, Jr., John Doe, Mary Doe, ABC Partnerships, and XYZ Corporations, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued October 20, 1998.
Decided November 9, 1998.
*377 Robert S. Sandman, Mays Landing, for plaintiffs-appellants (Hankin, Sandson & Sandman, attorneys; Mr. Sandman, on the brief)
Mark T. Connell, Toms River, for defendant-respondent Norbert J. Burke, Jr., (Kelaher, Garvey, Ballou & Van Dyke, attorneys; Mr. Connell, of counsel and on the brief).
Before Judges BROCHIN, KLEINER and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
George F. Ewing (plaintiff) and Esther Ewing, his wife, who sued per quod, appeal *378 from a judgment entered in favor of defendant based upon a jury verdict of no cause for action. Because of an error in the jury instructions we reverse.
On February 14, 1994, plaintiff was driving a 1986 pick-up truck on Seashore Road, Lower Township, New Jersey when it collided with a vehicle operated by defendant Norbert J. Burke, Jr. At trial plaintiff called the investigating police officer, Patrolman Edward Dougherty, as a witness. Dougherty testified that the road curves in an S-shape in the area of the collision and estimated that the point of impact was 100 feet from the curve. Dougherty also testified that he spoke to defendant after the accident and that defendant stated he pulled out of Sunset Towing to go back on to Seashore Road, looked in his mirror, and did not see anything prior to the collision. Defendant did not specify whether he looked out his rear-view mirror or his side mirror.
Plaintiff also called Charles Matthews, the owner of Sunset Towing, as a witness. Matthews testified that he had been a passenger in defendant's car and that defendant pulled off to the shoulder of the road at Sunset Towing parallel to the parking area in order to permit Matthews to alight. Matthews said he exited the car and started to enter his shop when he heard the collision. He did not witness the accident.
Plaintiff testified that he was driving on Seashore Road around the S-shape curve when he first saw defendant's vehicle in the roadway perpendicular to him. Although he turned his vehicle hard to the left it collided with defendant's vehicle. He said he had no time to avoid the impact. Plaintiff's theory on liability was that defendant was attempting a U-turn on Seashore Road when the collision occurred.
Defendant's theory on liability was that neither party was negligent. In fact, prior to summation, he withdrew his separate defense of plaintiff's comparative negligence. Accordingly, during summation defense counsel argued as follows:
No one likes it when bad things happen to decent people. People don't want to be involved in accidents. I'm sure Mr. Ewing wishes he wasn't in this accident. My client did not want to be in this accident. But accidents do happen and just because an accident happens doesn't mean somebody was negligent.

* * * * *
There's been testimony from the police officer that when he talked to my client after the accident and my client said, I looked in the mirror, I didn't see anything. There [sic] testimony from Mr. Ewing that he talked to my client and he said ... my client said, I looked in the mirror, I didn't see anything. Mr. Ewing has also said, when he came around the curve, he didn't see my client's car until it was already in the road. Mr. Ewing didn't see my client. My client didn't see Mr. Ewing. Accidents happen.
In the course of his charge, after generally instructing the jury on the concept of negligence, the trial judge instructed the jury as follows:
Given the testimony in this case, ladies and gentlemen, given the weight, whatever kind of weight you would apply to the that is what you believe and that what you don't believe, or what you believe the probabilities are, theretherethere is the potential to determine that defendant may have been making a U-turnmay have been making a left turn. The law that I told you applies in those circumstances.
However, more specifically, let me tell you about the following: That the law imposes upon the driver of the motor vehicle the duty to exercise the care that a reasonably prudent person would exercise or would use under all of the circumstances confronting him at the particular time in question. Failure to exercise such care constitutes negligence. Obviously, the risk of harm will vary with the circumstances. In such settings, that risk is greaterin some settings that risk is greater than in others. And when this is so, a reasonably prudent person will exercise a greater amount of care in proportion to the increased risk. With respect to these left turns and U-turns involving as they do movement across the path of other traffic, the risk of *379 harm is ordinarily increased beyond that which effects or exists when a motor vehicle is proceeding along a direct course. Hence with respect to these kinds of terms [sic], a reasonably prudent person would seek an opportune moment for the turn and would exercise an increased amount of care in proportion to the increased danger. Care commensurate with the risk of danger. Accordingly, the law provides that persons seeking to make this kind of a turn, a U-turn or a left turn, has the duty to seek an opportune moment and to exercise a degree of care in proportion to the increased danger involved in the turn.

* * * * *
In addition, where the view of the roadway ahead is impaired by some obstruction because of some kind of an obstruction, there is a duty to exercise care commensurate with the risk of the hazard presented. The operator of a motor vehicle in such a situation is required to exercise reasonable care; that is, such care as the existing conditions require to have his vehicle under such control as to be able to stop, if necessary, to avoid harm to others on the highway. In addition, while operating a vehicle the operator is required to anticipate that others vehicles and persons may be on the highway, must use reasonable care to adjust his operation so as not to cause injury to any others upon that highway.
The charge given by the trial judge correctly stated the degree of care that must be exercised by a driver executing a U-turn or left turn. See Ambrose v. Cyphers, 29 N.J. 138, 149, 148 A.2d 465 (1959); Zec v. Thompson, 166 N.J.Super. 52, 54, 398 A.2d 1323 App.Div.1979). In addition, the charge relating to a U-turn conformed to Model Jury Charge 5.20B and the portion of the charge relating to the left-hand turn conformed to Model Jury Charge 5.20C. The judge's instructions were technically correct. However, they were incomplete since they omitted any reference to N.J.S.A. 39:4-125 which is pertinent to the facts of this case. That statute provides, in pertinent part, as follows:
The driver of a vehicle shall not turn such vehicle around so as to proceed in the opposite direction upon any curve ... or at any place upon a highway as defined in R.S. 39:1-1 where the view of such vehicle is obstructed within a distance of five hundred feet along the highway in either direction.
That statute was applicable to the facts of this case. However, plaintiff's counsel did not, pursuant to R. 1:8-7(a), request the trial judge to charge N.J.S.A. 39:4-125 to the jury nor did he object, pursuant to R. 1:7-2, to the failure of the trial judge to include reference to N.J.S.A. 39:4-125 in his charge. Moreover, plaintiff did not raise this issue in his notice of appeal, case information statement, or appellate brief. The issues actually raised by plaintiff on this appeal are as follows:
(1) The Trial Judge erred in failing to grant a directed verdict and failing to grant a Judgment Notwithstanding Verdict, or in the alternative, a new trial; and the verdict must be reversed since it was contrary to and not supported by the admissible evidence;
(2) The Motion for Judgment Notwithstanding Verdict and/or new trial should have been ordered because of the failure of all six jurors to render a decision. In the alternative, the verdict should be reversed and the matter remanded because of the failure of all six jurors to vote;
(3) The Court should have directed a verdict and/or granted the Motion for Judgment Notwithstanding Verdict or new trial because of the defendant failing to honor the Notice in Lieu of Subpoena. In the alternative, the verdict should be reversed and the matter remanded for a new trial because the defendant failed to appear at trial;
(4) The Trial Court erred in refusing to give a curative instruction based upon defense counsel's improper questions from which improper inferences must have occurred;
(5) The Court should have given the jury an adverse inference charge as it relates to the failure of the defendant to appear, or in the alternative, permitted plaintiff's *380 counsel to more fully discuss defendant's failure to testify in summation;
(6) Looking at the totality of events and circumstances, the verdict must be reversed and the matter remanded for trial. The Trial Court should have granted the Motion for Directed Verdict or Judgment Notwithstanding Verdict and/or ordered a new trial given the totality of circumstances and since the verdict is contrary to the great weight of the evidence presented.
We have thoroughly reviewed the record, the briefs filed, and the arguments of counsel and conclude that the issues raised by plaintiff are clearly without merit. See R. 2:11-3(e)(1)(E). However, we reverse and remand due to the failure of the trial judge to sua sponte incorporate N.J.S.A. 39:4-125 into his charge to the jury.
Ordinarily, the failure to object to jury instructions when given constitutes a waiver of the right to challenge the instruction on appeal. See R. 1:7-2; State v. Chew, 150 N.J. 30, 82, 695 A.2d 1301 (1997). An Appellate Court may reverse only if it finds plain error. State v. Chew, supra, 150 N.J. at 82, 695 A.2d 1301; R. 2:10-2. In fact, the waiver provisions of R. 1:7-2 are expressly made subject to R. 2:10-2. A reviewing court must evaluate the charge in its entirety to determine if, as a whole, it adequately presents the law and does not tend to confuse or mislead the jury. Conklin v. Hannoch Weisman, 145 N.J. 395, 409, 678 A.2d 1060 (1996). If the charge has the tendency to confuse or mislead the jury, there should be a reversal. Ibid. The absence of an objection to the charge may suggest that trial counsel perceived no error or prejudice and, in any event, prevented the trial judge from remedying any possible confusion in a timely fashion. See State v. Wilbely, 63 N.J. 420, 422, 307 A.2d 608 (1973); State v. Macon, 57 N.J. 325, 337, 273 A.2d 1 (1971); Bradford v. Kupper Associates, 283 N.J.Super. 556, 573-74, 662 A.2d 1004 (App.Div.1995), certif. denied, 144 N.J. 586, 677 A.2d 759 (1996). Nevertheless an improper jury instruction is a poor candidate for application of the harmless error rule, and a charge which misleads a jury will require a reversal and a new trial. Vallejo By Morales v. Rahway Police Dept., 292 N.J.Super. 333, 342, 678 A.2d 1135 (App. Div.), certif. denied, 147 N.J. 262, 686 A.2d 763 (1996)
The motor vehicle statutes establish standards of conduct for motorists on our highways and, under usual circumstances, the violation of motor vehicle statutes is evidence of negligence. Paiva v. Pfeiffer, 229 N.J.Super. 276, 280, 551 A.2d 201 (App. Div.1988). Ordinarily, therefore, if there is evidence tending to establish that a vehicle was operated in violation of a motor vehicle statute, the statutory duty should be charged to the jury in order to assist the jury in arriving at the appropriate result. N.J.S.A. 39:4-125 clearly applied to the facts of this case in light of Doughtery's testimony that the point of impact was approximately 100 feet from the curve in the roadway. Obviously, the view of each driver was obstructed by virtue of the configuration of the roadway. The error in the failure to charge the statute is magnified by the theory of defendant's case. Defendant conceded that plaintiff was not guilty of negligence and argued to the jury that neither party was negligent. He effectively argued that neither party could see the other by virtue of the configuration of the road. The jury, by its verdict, obviously accepted that argument. We are concerned that had the jury been instructed that the statute provides that the driver of a vehicle shall not turn such vehicle around so as to proceed in the opposite direction where the view of such vehicle is obstructed within a distance of 500 feet along the highway in either direction, the result of this trial may have been different. The jury may, and probably would, have concluded that defendant should not have attempted a U-turn at that location since he could not see for a distance of 500 feet, and more importantly, plaintiff could not see him for a distance of 500 feet. We are concerned that the omission in the charge of any reference to N.J.S.A. 39:4-125, coupled with the theory of the defense, may have led this jury down a path it might otherwise not have traveled. In other words, the failure to charge the statute unquestionably had the clear capacity to produce an unjust result. See R. 2:10-2. We recognize that the jury charge essentially *381 conformed to the model jury instructions. However, the model charges are only guidelines and a trial judge must modify the model charge when necessary so that it conforms with the facts, circumstances, and law that apply to the case being tried.
Finally, we must consider whether it is appropriate to reverse a judgment entered upon a jury verdict based upon an error in the jury instructions which was not only not argued before the trial court, but also not raised by plaintiff on appeal. R. 2:10-2 expressly permits the appellate court, in the interests of justice, to notice plain error not brought to its attention. See also Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 300 A.2d 142 (1973); Rodio v. Smith, 123 N.J. 345, 587 A.2d 621 (1991). Our authority to do so should be sparingly exercised. However, in this case, we believe the interests of justice require a reversal. Ordinarily, we would not reverse on an issue not raised in the appellate briefs without giving the parties an opportunity to further brief the issue. See Kimmel v. Dayrit, 154 N.J. 337, 342, 712 A.2d 1129 (1998). However, the issue was tangentially briefed when plaintiff's counsel referred to the statute in his brief in the course of his argument that the trial judge erred in denying his motion for a directed verdict and his motion for a judgment n.o.v. Furthermore, we advised counsel prior to oral argument of our concern regarding the failure to charge the statute, and the issue was fully developed during oral argument. Neither party requested the opportunity to file additional briefs.[1]
Reversed and remanded for a new trial.
NOTES
[1] We believe Civil Model Jury Charge 5.20B should be modified to include a suggestion to trial judges to refer to N.J.S.A. 39:4-125 when warranted by the facts of the case. Accordingly, we refer this concern to the Committee on Model Jury Charges, Civil, for further consideration.