724 A.2d 254 (1999)
318 N.J. Super. 361
STATE of New Jersey, Plaintiff-Respondent,
v.
Vernon GREEN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 10, 1998.
Decided January 22, 1999.
*256 Ivelisse Torres, Public Defender, for defendant-appellant (Sylvia Orenstein, Assistant Deputy Public Defender, of counsel and on the brief).
Peter Verniero, Attorney General, for plaintiff-respondent (Craig V. Zwillman, Deputy Attorney General, of counsel and on the brief).
Before Judges BROCHIN, KLEINER and STEINBERG.
*255 The opinion of the court was delivered by STEINBERG, J.A.D.
Following a trial by jury, defendant Vernon Green was convicted of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count one); third-degree aggravated assault on a police officer, N.J.S.A. 2C:12-1(b)(5) (count two); second-degree eluding a law enforcement officer, N.J.S.A. 2C:29-2(b) (count three); and second-degree aggravated assault while eluding a law enforcement officer, N.J.S.A. 2C:12-1(b)(6) (count four).
The trial judge sentenced defendant to ten years of imprisonment with a five-year period of parole ineligibility on count one to run consecutively to a sentence defendant was then serving; a concurrent five-year term of imprisonment on count two; a concurrent ten-year term of imprisonment on count three; and a concurrent ten-year term of imprisonment on count four. The appropriate monetary penalties were also assessed. However, on count four the trial judge neglected to impose the mandatory drivers license revocation prescribed by 2C:29-2(b).
*257 On appeal defendant raises the following issues:
POINT I THE TRIAL COURT'S REFUSAL TO CHARGE THE JURY ON THE DEFENSE OF DEFENDANT'S INTOXICATION AT THE TIME OF THE OFFENSE DEPRIVED DEFENDANT OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL. (U.S. CONST., AMENDS. V, VI, XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9, 10).
POINT II THE TRIAL COURT SHOULD HAVE ENTERED A JUDGMENT OF ACQUITTAL ON THE CHARGE OF SECOND-DEGREE AGGRAVATED ASSAULT SUA SPONTE BECAUSE THE STATE FAILED TO PROVE, BEYOND A REASONABLE DOUBT, THAT DETECTIVE FELICE HAD SUFFERED SERIOUS BODILY INJURY.
POINT III IN A CASE WHERE DETECTIVE FELICE'S INJURIES WERE CAUSED BY HIS OWN ACTIONS, IT WAS PLAIN ERROR FOR THE TRIAL COURT NOT TO CHARGE THE JURY ON CAUSATION. (NOT RAISED BELOW).
POINT IV THE TRIAL COURT ERRED BY FAILING TO INSTRUCT THE JURY ON THE LESSER-INCLUDED OFFENSE OF SIMPLE ASSAULT, THUS DEPRIVING HIM OF A FAIR TRIAL. (U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9, 10)(NOT RAISED BELOW).
POINT V THE PROSECUTOR'S MISCONDUCT BOTH DURING TRIAL AND IN SUMMATION DENIED MR. GREEN A FAIR TRIAL, IN VIOLATION OF THE CONSTITUTIONS OF THE UNITED STATES AND NEW JERSEY. U.S. CONST. AMENDS. V, VI, XIV; N.J. CONST. ART. I, ¶¶ 1, 9, 10 (NOT RAISED BELOW).
POINT VI IF A JUDGMENT OF ACQUITTAL IS NOT ENTERED ON COUNT ONE, DEFENDANT'S CONVICTION FOR SECOND-DEGREE AGGRAVATED ASSAULT MUST BE MERGED WITH THAT FOR SECOND-DEGREE AGGRAVATED ASSAULT WHILE ELUDING, TO PREVENT VIOLATION OF HIS RIGHT TO BE FREE OF DOUBLE PUNISHMENT UNDER THE STATE AND FEDERAL CONSTITUTIONS (NOT RAISED BELOW).
POINT VII BECAUSE THE JUDGE FAILED TO PROPERLY WEIGH THE AGGRAVATING AND MITIGATING CIRCUMSTANCES, DEFENDANT'S SENTENCE IS MANIFESTLY EXCESSIVE.
We conclude that the independent and cumulative effect of the failure of the trial judge to charge the jury regarding causation on count one, see N.J.S.A. 2C:2-3, as well as the failure of the trial judge to limit the jury's consideration on count one to an attempt to cause serious bodily injury, and the failure of the trial judge to charge the lesser-included offense of simple assault, N.J.S.A. 2C:12-1(a)(1) on count two, deprived defendant of his constitutional right to a fair trial on those counts. See State v. Orecchio, 16 N.J. 125, 129-30, 106 A.2d 541 (1954). Those errors were clearly capable of producing an unjust result regarding the convictions on counts one and two, and we reverse those convictions. We also reverse the conviction on count four due to the absence of a charge on that count. We affirm the conviction on count three.
According to the State's proofs, on November 10, 1995, Millville Detectives Don Felice, Robert Chard, and Ron Harvey, all of whom testified against defendant, were conducting a surveillance operation at 46 North Third Street, the location of a known crack house. The detectives observed defendant drive up to the house in a red Mitsubishi sports car, enter the house for five or ten minutes, and return to his car. They recognized defendant from past surveillance and encounters with him, and began to follow him as he departed. Defendant pulled into a well-lit parking lot at the Elks Lodge approximately fifteen or twenty yards from a public telephone. The detectives followed defendant into the parking lot and parked their unmarked car in front of defendant's vehicle *258 "nose-to-nose". Although all three detectives were in plain clothes, Felice said he was wearing a police jacket with the word "police" displayed on the rear and right chest area of the jacket. The detectives exited the undercover vehicle. Felice approached the driver's side of defendant's car. According to Felice, he identified himself as a police officer and, when he was twelve to eighteen inches from defendant's vehicle, displayed his badge and told defendant he would like to speak to him. Felice claimed that as he displayed his badge defendant put his vehicle in reverse and "peeled" backward quickly.
Felice testified that he ran after the car, shouting "police, stop the car, Vernon, stop the car". Nevertheless, defendant drove forward and the vehicle struck Felice in the left leg causing him to experience some pain in the leg. Felice continued to run alongside defendant's car and punched his right hand through the driver's side window, shattering the window and cutting his hand. His purpose was to gain entry into the vehicle to shut the ignition off. With the window broken, Felice testified that he continued shouting to defendant, "police, stop the car, Vernon". Defendant's vehicle was moving quickly and Felice rolled off onto the ground. Felice was later taken by ambulance to a hospital where it was determined that he had suffered lacerations to both hands, cuts to some of his fingers, and a bruise on his left leg. He was left with a scar on his palm approximately an inch and a half long. On cross-examination, Felice conceded that when his vehicle parked in front of defendant's vehicle, the police car's headlights may have been in defendant's eyes. On cross-examination Felice also said that once the window was broken he was no more than six inches from defendant, shouting in a loud voice, identifying himself as a police officer, and commanding defendant to stop the vehicle. Detectives Chard and Harvey testified and corroborated Felice's version of the incident. Harvey remained with Felice at the parking lot and Chard pursued defendant. A high speed chase ensued, at times at speeds of up to eighty miles per hour, on a winding, residential road. At one point defendant forced two cars off the road; at another point he forced a car into the other lane of travel. Chard was joined by two backup vehicles. The chase ended when defendant stopped. Chard pulled in front of defendant with his vehicle and blocked him, and defendant was apprehended.
According to Chard, at the station defendant said he fled because he thought the police were drug dealers who were after him. However, Chard also testified that defendant later changed his story, admitting that he recognized Chard when he first approached defendant in the parking lot. Chard further testified that he had seen defendant approximately fifty times over the course of fifteen years and defendant knew that he was a police officer.
Defendant testified that he had argued with his wife that evening and was upset when he left home. He admitted going to the crack house and smoking crack cocaine because he was depressed. He said he went to the Elks Lodge parking lot to telephone his wife. According to defendant he began to gather his thoughts as to what he would say to his wife when a vehicle pulled up behind him. He said he saw one individual get out and approach his car. He claimed to have been startled because the vehicle came up behind him quickly. Defendant said his window was up and his radio was playing loudly. He saw the person run towards his car but denied hearing him say anything to him. He put his car in reverse and then started to go forward when the window broke. He claimed he was frightened because he had just left a crack house and had previous altercations with drug dealers. Defendant asserted that he was under the influence of cocaine at the time. He denied that Felice was wearing a police jacket and denied that the detectives had identified themselves or commanded him to stop. He claimed he did not realize they were police officers. He also denied striking Felice with his vehicle and telling Chard at the station that he had recognized Chard at the parking lot.
Prior to summation the judge conducted a preliminary conference in chambers and then conducted a charge conference on the record. Defense counsel specifically requested a *259 charge on intoxication. See N.J.S.A. 2C:2-8. The basis for that request was that defendant was observed leaving a crack house, that the detectives said they initially approached defendant because they believed his erratic driving was drug-induced, and that defendant testified he had ingested crack cocaine immediately prior to his arrest. The trial judge denied the request. Defense counsel made no other requests to charge. Specifically, defense counsel did not request the judge to charge any lesser-included offenses.

A
We first consider defendant's contention that the trial judge erred in denying his request to charge the jury on the defense of intoxication. We disagree. Intoxication is a defense if it negates an element of the offense. See N.J.S.A. 2C:2-8(a). A trial court is only required to instruct the jury on intoxication if there is a rational basis for a conclusion that defendant's faculties were so prostrated that he or she was incapable of forming an intent to commit the crime. See State v. Mauricio, 117 N.J. 402, 418-19, 568 A.2d 879 (1990); State v. Cameron, 104 N.J. 42, 58, 514 A.2d 1302 (1986). There was no rational basis for a conclusion that defendant had reached that level of intoxication. See State v. Micheliche, 220 N.J.Super. 532, 543, 533 A.2d 41 (App.Div.), certif. denied, 109 N.J. 40, 532 A.2d 1108 (1987), where in rejecting defendant's contention that he was entitled to a charge on intoxication simply because he had consumed large quantities of alcohol, we observed that the degree of intoxication must be such as to bring about so great a prostration of the actor's faculties that the requisite mental state was totally lacking. See also State v. Selby, 183 N.J.Super. 273, 276, 443 A.2d 1076 (App.Div.1981), where we observed that defendant's admission that he smoked marijuana and stated that he felt "high" was insufficient to entitle him to a charge on intoxication, particularly since his testimony showed his awareness and recollection in detail of the events of the night in question.

B
We next consider defendant's contention that the trial judge should have sua sponte entered a judgment of acquittal on the first count of the indictment which charged defendant with second-degree aggravated assault in violation of N.J.S.A. 2C:12-1(b)(1). We reject that contention. In considering a motion for a judgment of acquittal at the close of the State's case or after all the evidence has been closed, the test is:
whether, viewing the State's evidence in its entirety, be that evidence direct or circumstantial, and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences which reasonably could be drawn therefrom, a reasonable jury could find guilt of the charge beyond a reasonable doubt.
[State v. Reyes, 50 N.J. 454, 459, 236 A.2d 385 (1967). See also R. 3:18-1.]
A person is guilty of second-degree aggravated assault only if, with one of the states of mind prescribed by the statute, he attempts to cause or causes serious bodily injury to another. N.J.S.A. 2C:12-1(b)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." See N.J.S.A. 2C:11-1(b). The State properly conceded, and we agree, that the injuries suffered by Felice do not meet the statutory definition of serious bodily injury.
However, the State proceeded on the theory that defendant attempted to cause serious bodily injury to Felice. In order to convict a defendant of attempted aggravated assault, the State must prove beyond a reasonable doubt that defendant acted with the culpability required for the crime of aggravated assault, and that defendant acted with the purpose of causing the result that is an element of aggravated assault, namely, serious bodily injury of another. N.J.S.A. 2C:5-1(a)(1) and (2); State v. Robinson, 136 N.J. 476, 484-85, 643 A.2d 591 (1994). In viewing the State's evidence in its entirety and giving the State the benefit of all its favorable testimony as well as all of the favorable inferences *260 which reasonably could be drawn from that evidence, a reasonable jury could have found defendant guilty of the charge of attempted aggravated assault beyond a reasonable doubt. A jury could have inferred that defendant placed his car in forward gear and drove it towards Felice and intentionally struck him. In addition, the jury could also have found that Felice then ran alongside defendant's car and punched his right hand through the driver's side window. With Felice hanging onto defendant's car, defendant accelerated causing Felice to roll off the car onto the ground. A jury could have concluded from this evidence that defendant's purpose or conscious objective was to cause serious bodily injury to Felice. The trial judge did not err in not sua sponte dismissing count one of the indictment.
Although we have concluded that the trial judge did not err in not sua sponte dismissing count one of the indictment, we are nevertheless constrained to reverse the conviction on that count due to an error in the charge. As we have noted, the evidence was insufficient to warrant submission to the jury of the charge of aggravated assault based upon the theory that defendant actually caused serious bodily injury to the victim but was adequate to support conviction of that crime based on the theory that defendant attempted to cause serious bodily injury to Felice. The trial judge, however, did not limit the jury's consideration on count one to the theory of an attempt to cause serious bodily injury to Felice. Since defendant did not object to the charge or raise this issue on appeal, we consider whether the failure to limit the jury's consideration to the theory of an attempt to cause serious bodily injury was plain error in that it was clearly capable of producing an unjust result. See R. 2:10-2.
Correct jury instructions are essential for a fair trial since they are at the heart of the proper execution of the jury function. SeeState v. Alexander, 136 N.J. 563, 571, 643 A.2d 996 (1994). Accordingly, ordinarily erroneous jury instructions are poor candidates for rehabilitation under the Plain Error Rule. See State v. Burgess, 298 N.J.Super. 254, 271, 689 A.2d 730 (App.Div.1997) aff'd, 154 N.J. 181, 712 A.2d 631 (1998). We conclude that the failure of the trial judge to limit the jury's consideration on count one to a theory of an attempt to cause serious bodily injury to Felice had the clear capacity to confuse the jury and therefore constitutes plain error since it was clearly capable of producing an unjust result. See Conklin v. Hannoch Weisman, 145 N.J. 395, 409, 678 A.2d 1060 (1996); Ewing v. Burke, 316 N.J.Super. 287, 720 A.2d 376 (App.Div.1998). Accordingly, we reverse the conviction on count one. On retrial of count one, the charge to the jury should focus on an attempt to cause serious bodily injury to Felice. The jury should not be charged alternatively under a theory that defendant actually caused serious bodily injury to Felice.

C
We next consider defendant's contention that the trial judge erred in failing to charge the jury on causation. Regarding the charge of aggravated assault, this issue is moot by virtue of our decision that the case should not be presented to the jury on a theory that defendant actually caused serious bodily injury to Felice. However, it is not moot regarding a theory of simple assault. See Part D of this opinion, infra. Defendant did not request a charge on causation either prior to trial pursuant to R. 1:8-7(a) or at the charge conference that was conducted prior to summations pursuant to R. 1:8-7(b). Moreover, although given the opportunity to do so, defendant did not object to the jury instructions for failure to include a specific charge on the question of causation. See R. 1:7-2. The absence of an objection suggests that trial counsel perceived no error or prejudice, and, in any event, prevents the trial judge from remedying any possible confusion in a timely manner. See State v. Chew, 150 N.J. 30, 82, 695 A.2d 1301 (1997). A reviewing court may reverse on the basis of unchallenged error only if it finds plain error clearly capable of producing an unjust result. See State v. Afanador, 151 N.J. 41, 54, 697 A.2d 529 (1997); R. 2:10-2. However, we agree with defendant that in this case there was a factual issue regarding causation that required the trial judge to give a fact-specific causation charge, and that her failure to do so was plain error.
*261 A person is guilty of second-degree aggravated assault if he either attempts to cause serious bodily injury to another, or, in fact, causes such injury, either purposely or knowingly, or, alternatively, under circumstances manifesting extreme indifference to the value of human life, recklessly causes such injury. N.J.S.A. 2C:12-1(b)(1). See N.J.S.A. 2C:2-2(b) (defining "purposely," "knowingly," and "recklessly.")
N.J.S.A. 2C:2-3 addresses the question of causation as follows:
(a) Conduct is the cause of a result when:
(1) It is an antecedent but for which the result in question would not have occurred; and
(2) The relationship between the conduct and result satisfies any additional causal requirements imposed by the code or by the law defining the offense.
(b) When the offense requires that the defendant purposely or knowingly cause a particular result, the actual result must be within the design or contemplation, as the case may be, of the actor, or, if not, the actual result must involve the same kind of injury or harm as that designed or contemplated and not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.
(c) When the offense requires that the defendant recklessly ... cause[d] a particular result, the actual result must be within the risk of which the actor is aware, ... or, if not, the actual result must involve the same kind of injury or harm as the probable result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.
Here, the injury to Felice's leg, which was relatively minor, was caused when defendant struck Felice with his car. The other injuries sustained by Felice were caused, in substantial part, by his own volitional act of punching his fist through the window of defendant's vehicle. Had the jury been properly instructed on causation it may have had a reasonable doubt whether the injuries sustained by Felice to his hands and fingers which occurred when he punched his fist through the window of defendant's car involved the same kind of injury or harm as that designed or contemplated by defendant, or whether those injuries were too remote, accidental in their occurrence, or dependent on the violational act of Felice to have a just bearing on defendant's liability or on the gravity of his offense. See N.J.S.A. 2C:2-3(b) and (c). Therefore, the failure to charge causation regarding the injuries to Felice's hands and fingers on the theory that defendant actually caused serious bodily injury to the victim, possessed the clear capacity to bring about an unjust result. See State v. Martin, supra, 119 N.J. at 17, 573 A.2d 1359.

D
We next consider defendant's contention that his conviction under the second count of the indictment that charged him with third-degree aggravated assault upon a law enforcement officer must be reversed due to the failure of the trial judge to sua sponte instruct the jury on the lesser-included offense of simple assault. Under N.J.S.A. 2C:12-1(b)(5)(a), a person is guilty of aggravated assault if he commits a simple assault upon a law enforcement officer who was acting in the performance of his duties while in uniform or exhibiting evidence of his authority. Here, in light of defendant's contention that he was unaware of Felice's status as a law enforcement officer, the record indicates the appropriateness of a charge of simple assault. See State v. Choice, 98 N.J. 295, 299, 486 A.2d 833 (1985). Two of the statutory elements of the offense were contested. Defendant testified that the officers were not in uniform and did not identify themselves as police, and that he did not realize they were police officers. If the jury felt that that testimony was sufficient to create a reasonable doubt as to either or both of those elements, there would have been a rational basis to have found defendant guilty only of simple assault under count two. The failure to charge simple assault as a lesser-included offense of aggravated assault on count two was clearly capable of producing an unjust result. See R. 2:10-2. We therefore reverse *262 the conviction on count two and remand for a new trial.
Although not raised by defendant at trial by way of an objection to the charge or on appeal, the jury charge on count two is incomplete. The judge followed the Model Jury Charge and essentially instructed the jury that the State must prove that defendant caused bodily injury to Felice, who was a law enforcement officer acting in the performance of his duties and exhibiting evidence of his authority purposely, knowingly or recklessly. That instruction omits any reference to scienter. The jury should have been instructed that, in addition to the other elements of the offense, it must find beyond a reasonable doubt, that defendant knew that Felice was a law enforcement officer acting in the performance of his duties, while in uniform or exhibiting evidence of his authority. See State v. Parsons, 270 N.J.Super. 213, 224, 636 A.2d 1077 (App.Div.1994); State v. Moll, 206 N.J.Super. 257, 260, 502 A.2d 87 (App.Div.), certif. denied, 103 N.J. 498, 511 A.2d 670 (1986).[1] The Model Jury Charges are only guidelines, and a trial judge must modify the Model Charge when necessary so that it conforms with the facts, circumstances, and law that apply to the facts being tried. See State v. Concepcion, 111 N.J. 373, 379, 545 A.2d 119 (1988).[2] The jury charge given could have led the jury to conclude that it could convict defendant of aggravated assault if he committed a simple assault upon Felice if Felice was acting in the performance of his duties, even though the jury had a reasonable doubt that defendant was aware of the fact that Felice was a law enforcement officer acting in the performance of his duties. On retrial, the jury should be so charged as to scienter.

E
We next consider defendant's contention that the prosecutor's misconduct during trial and summation denied defendant a fair trial. These alleged errors were not brought to the trial judge's attention by way of objection and are raised for the first time on appeal. For a conviction to be reversed based upon prosecutorial misconduct, the conduct complained of must be so egregious as to deprive a defendant of a fair trial. State v. Harvey, 151 N.J. 117, 216, 699 A.2d 596 (1997).
During the course of cross-examination of defendant, defendant was asked four times whether the police officers were telling the truth when they testified. The following exchanges occurred:
Q. It's your testimony today that you don't know Detective Sergeant Chard; isn't that true?
A. I never saw Chard before, never.
Q. So when he testified that he has known you for the past several years, he's lying, he's not telling the truth?
A. He's lying.
* * * * *
Q. Isn't it true that you passed in a no-passing zone and forcing vehicles off the road?
A. No, that's another false statement. Never did that.
Q. So these police are lying?
A. Yes they are.

*263 * * * * *
Q. Well isn't it true that you continued on and came to a stop, Detective Sergeant Chardthe other two marked units came to a stop and then you took off?
A. No, ma'am.
Q. So when Detective Sergeant Chard testified today, he's not telling the truth; right?
A. No, ma'am, he's not telling the truth.
* * * * *
Q. And down at the station you made a statement to Detective Chard that you recognized him when he was at the Elks Lodge parking lot; didn't you?
A. Never made that statement, never made that statement at all.
Q. So if that's in his report, and that's what he testified to today, then, once again, he's lying and you're telling the truth.
A. Ma'am, he is lying.
This type of cross-examination compels a witness to characterize the testimony of another witness and is, therefore, argumentative and highly improper. However, we conclude that the challenged portions of the cross-examination do not rise to the level of an error clearly capable of producing an unjust result. We have reversed the convictions on counts one and two on other grounds. This is the only challenge to the convictions on counts three and four on which the evidence of guilt was overwhelming. On retrial, we direct that this method of cross-examination not be repeated. Although we agree that the cross-examination was improper, we also conclude that it was not clearly capable of producing an unjust result.

F
In response to our colleague's dissent, we add the following comments. The dissent concludes that since count three only charged defendant with attempting to elude Felice, and that since Felice was not struck and injured on a public street or highway, the evidence of the subsequent chase through city streets and pursuit by officers other than Felice cannot support the conviction. We disagree. In our view, that construction of N.J.S.A. 2C:29-2(b) limiting it to acts of flight on a street or highway is much too narrow. Where, as here, the act of flight begins in a private parking lot and continues uninterrupted onto a public street or highway, that element of the offense is satisfied. Moreover, it is immaterial that the continued flight is from other officers since the officer who initially attempted to stop defendant was lying injured on the parking lot. The chase, initially to elude that officer, was one continuous chase and defendant cannot avoid conviction because the chase was joined by other officers.
One basis for our reversal of the conviction on count two was the failure of the trial judge to instruct the jury on defendant's awareness of the victim's status as a law enforcement officer. The judge's charge on eluding on count three specifically required the jury to find beyond a reasonable doubt that defendant knew Felice was a police or law enforcement officer. Thus, the charge on eluding did not suffer from the same infirmity as the charge on aggravated assault. There is nothing that requires a reversal of the conviction on count three. We also observe that the judge interrupted her charge as soon as she completed her instructions on count three and asked counsel at sidebar if there were any objections to that portion of the charge. Defendant voiced no objection. We perceive nothing illogical or inconsistent in affirming the conviction on count three while reversing the conviction on count two. On count three the jury was clearly and unequivocally instructed that it must find, as one of the elements of the offense, that defendant was aware that the victim was a law enforcement officer. The jury was not so instructed on count two.

G
Although not raised by defendant on appeal, and not objected to at trial, the trial judge failed to include any reference to count four in her jury instructions. That count charged defendant with violation of N.J.S.A. 2C:12-1(b)(6) which provides, in pertinent part as follows:

*264 A person is guilty of aggravated assault if he causes bodily injury to another person while fleeing or attempting to elude a law enforcement officer in violation of subsection b. of N.J.S. 2C:29-2.... Notwithstanding any other provision of the law to the contrary, a person shall be strictly liable for a violation of this subsection upon proof of a violation of subsection b. of N.J.S. 2C:29-2 ... which resulted in bodily injury to another person.
The judge merely asked a question on the verdict sheet as to whether defendant caused bodily injury to Felice while fleeing or attempting to elude a law enforcement officer. The verdict sheet was set up as follows:
3(a). ELUDING A LAW ENFORCEMENT OFFICERTHIRD DEGREE
How do you find the defendant, VERNON GREEN, on or about November 10, 1995 in Millville, New Jersey, did, while operating a motor vehicle, knowingly and unlawfully flee or attempt to elude Det. D. Felice after having received a signal to stop?
____ GUILTY ____ NOT GUILTY
If the answer is GUILTY, proceed to 3(b).
(b) ELUDING A LAW ENFORCEMENT OFFICERSECOND DEGREE
Did defendant's flight or attempt to elude create a risk of death or injury to any person?
________YES _________NO
If you answered "GUILTY" to 3(a), please answer question no. 4. Otherwise cease deliberations.
4. Did the defendant, VERNON GREEN, on or about November 10, 1995 in Millville, New Jersey, cause bodily injury to Det. D. Felice, while fleeing or attempting to elude a law enforcement officer?
________YES ________NO
Apparently a discussion took place in chambers at some time prior to the charge concerning how to charge count four. However, there is nothing on the record setting forth what transpired in chambers. When the judge called counsel to sidebar and asked for any objections to the charge, the following exchange took place between the prosecutor and the judge.
The Court: Any objections to the charge?
Prosecutor: No. Did that include the aggravated assault while eluding? Are you going to tell them on the verdict sheet?
The Court: It will be on the verdict sheet.
Prosecutor: OK. Is the verdict sheet ready?
The Court: No, it will be. Do you remember, we talked in chambers, that if they found him guilty of eluding, they are to go on to this additional question, which will be did his conduct cause injury while fleeing or attempting to elude, and that will cover that fourth, I think it's the fourth count of the indictment.
Prosecutor: OK. No objections.
Counsel and the trial judge have a mutual obligation to make a record and to request and provide for the record a notation of events occurring in chambers, either by way of actual transcript, or summarization on the record so that a reviewing court will have the benefit thereof. Fehnel v. Fehnel, 186 N.J.Super. 209, 217, 452 A.2d 209 (App.Div. 1982).[3] We have no alternative but to deal with the record as it is presented to us. However, we cannot discern from this record the reason why the judge decided to merely refer to count four on the verdict sheet without giving any specific instructions to the jury regarding that count. We conclude that the failure to charge on count four was reversible error. A trial judge must instruct the jury as to the fundamental principles of law that control each separate charge. State v. Butler, 27 N.J. 560, 595, 143 A.2d 530 (1958). Defendant did not object to the failure of the trial judge to charge the jury regarding count four. In fact, defendant may have acquiesced in the apparent decision of the trial judge to permit the jury to return a verdict on count four by merely answering the question on the verdict sheet. Accordingly, we must consider the failure to charge on count four in the context of the plain error *265 rule. R. 2:10-2. We may reverse only if the unchallenged error is clearly capable of producing an unjust result.
We conclude that the failure to instruct the jury at all regarding the offense set forth in count four requires reversal of the conviction on that count. A verdict sheet is not a substitute for a verbal instruction from the judge. We understand that the judge may have determined that a mere reference to the offense on the verdict sheet would suffice in light of the fact that N.J.S.A. 2C:12-1(b)(6) imposes strict liability upon a defendant who causes bodily injury to another person while fleeing or attempting to elude a law enforcement officer in violation of N.J.S.A. 2C:29-2(b). We so infer in light of the fact that the judge had already charged the jury on a violation of N.J.S.A. 2C:29-2(b) when charging count three and had already charged the jury on the concept of bodily injury when charging count two. Nevertheless, we conclude that essential to a fair trial was guidance from the trial judge by way of specific instructions on count four that, at the very least, referred to her prior instructions on eluding a police officer and bodily injury, and required the jury to deliberate anew on count four. Accordingly, we reverse the conviction on count four.

H
In light of our reversal of the conviction on counts one, two and four, it is unnecessary to consider defendant's next contention that the conviction under count four should have merged with the conviction under count one. However, we note that the State concedes that the two convictions should have merged.

I
Finally, we conclude that defendant's argument regarding the sentence imposed is without merit, and we reject it. See R. 2:11-3(e)(1). However, we observe that the State may move for resentencing on count three, since defendant has no reasonable expectation of finality in the sentence imposed on convictions he is appealing. See State v. Rodriguez, 97 N.J. 263, 478 A.2d 408 (1984).
Affirmed in part, reversed and remanded in part for further proceedings consistent with this opinion.
KLEINER, J.A.D., concurring in part, dissenting in part.
In the majority opinion, my colleagues have concluded that defendant's conviction on counts one, two, and four of the indictment must be reversed thus entitling defendant to a new trial on those counts. The majority would affirm defendant's conviction on count three. Although I fully agree with the majority opinion as to counts one, two, and four, I respectfully dissent from the conclusion that defendant's conviction on count three of the indictment should be affirmed. I would reverse defendant's conviction on count three and would remand the entire indictment to the Law Division for a new trial on all counts.
Count three of the indictment charged defendant with a violation of N.J.S.A. 2C:29-2(b). The statute, in pertinent part, provides:
Any person, while operating a motor vehicle on any street or highway in this State... who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle ... to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person.

[emphasis added.]
Count three of the indictment charged defendant:
did knowingly and unlawfully flee in a motor vehicle or did knowingly and unlawfully attempt to elude a law enforcement officer, to wit, Det. D. Felice of the Millville Police Department, while operating a motor vehicle, after having received a signal from said officer to bring the vehicle to a full stop....

[emphasis added.]
As part of her charge the judge stated:
In order to convict the defendant of third-degree eluding, the State must prove beyond *266 a reasonable doubt each of the following six elements: Number 1, that Vernon Green was operating a motor vehicle on a street or highway in this state; number 2, that Detective Felice was a police or law enforcement officer; number 3, that Mr. Green knew that Detective Felice was a police or law enforcement officer; number 4, that Detective Felice signaled Mr. Green to bring the vehicle to a full stop; number 5, that Mr. Green knew that the officer had signaled him to bring the vehicle to a full stop; number 6, that defendant fled or attempted to elude the officer.

[emphasis added.]
As given, the judge's charge was a correct statement of the elements of N.J.S.A. 2C:29-2(b).
My misgivings as to defendant's conviction on count three relate to our conclusion that the trial judge erred in failing to sua sponte instruct the jury on the lesser-included offense of simple assault, to the N.J.S.A. 2C:12-1(b)(5)(a). In Part D of the majority opinion, we state:
Here, in light of defendant's contention that he was unaware of Felice's status as a law enforcement officer, the facts clearly indicate the appropriateness of a charge of simple assault. See State v. Choice, 98 N.J. 295, 299 [486 A.2d 833] (1985). Two of the statutory elements of the offense were contested. Defendant testified that the officers were not in uniform and did not identify themselves as police, and that he did not realize they were police officers. If the jury felt that the testimony was sufficient to create a reasonable doubt as to either or both of those elements, there could have been a rational basis to have found defendant guilty only of simple assault on count two.
Having reached this conclusion, I consider that it was incumbent for the judge to craft her charge on count three to encompass the same theory as offered by defendant's testimony. If defendant was not aware of Felice's status as a law enforcement officer when defendant struck Felice with his automobile, then logically, defendant was not aware of Felice's status as a law enforcement officer when defendant fled in his motor vehicle "after having received a signal from said officer to bring the vehicle to a full stop...." N.J.S.A. 2C:29-2(b) (emphasis added).
The Majority states, "If the jury felt that [defendant's] testimony was sufficient to create a reasonable doubt" as to the status of Felice, "there would have been a rational basis" to inform the jury that it should find defendant not guilty on count three. Although the majority opinion stresses those facts upon which a jury might conclude that, despite defendant's misperception of Felice's status, defendant's conduct upon leaving the parking lot constituted a violation of N.J.S.A. 2C:29-2(b), the judge's charge to the jury did not encompass any fact occurring beyond the parking lot of the Elks Lodge. The judge did not include any reference within her charge to defendant's operation of his vehicle after leaving the parking lot. Although defendant has not raised this error in the judge's charge as error, I conceive the error to have been plain error, clearly capable of producing an unjust result. See R. 2:10-2.
I additionally note that each count of the indictment identified Detective D. Felice as the victim of defendant's alleged criminal acts. The portion of the majority opinion in which I concur correctly notes that Felice was injured in the parking lot of the Elks Lodge. He did not participate in any subsequent pursuit of defendant by Detective Chard, who was later joined by other officers in marked police vehicles. Defendant's manner of operating his motor vehicle described by Chard would have reasonably led to a separate charge of eluding a police officer, N.J.S.A. 2C:29-2(b), had the grand jury chosen to indict defendant for eluding Chard and other unnamed police officers in marked police vehicles. The grand jury did not so charge, but limited count three of the indictment to Felice's action vis-a-vis defendant at the Elks Lodge parking lot. The parking lot simply cannot qualify as a "street or highway" within the intendment of N.J.S.A. 2C:29-2(b). In fact, the judge in her charge specifically referred to the operation of a motor vehicle by defendant on a "street or highway" as an element of the eluding a police officer offense. Id. Although the majority relies upon defendant's manner of operating *267 his vehicle after leaving the parking lot as sufficient evidence of eluding a police officer to convict defendant of violating N.J.S.A. 2C:29-2(b), that interpretation of the statute is substantially broad and certainly required the trial judge to specifically reference that conduct in her charge as to count three. Here, as noted, the trial judge specifically limited the jury to its consideration of the facts relating solely to defendant's response to Felice's command at the Elks Lodge parking lot. The charge did not reference defendant's alleged manner of operating his motor vehicle on the street and highway as observed by Chard. I thus conclude that the charge on count three, as given by the trial judge, was plain error, clearly capable of producing an unjust result. See R. 2:10-2.
I would therefore reverse defendant's conviction on count three of the indictment and would remand the entire indictment to the Law Division for a new trial on all counts.
NOTES
[1] Since N.J.S.A. 2C:12-1(b)(5)(a) does not expressly require scienter there is no prescribed requirement of culpability. We conclude that the Legislature could not have intended the prescribed culpability to be either purposeful, knowing or reckless. See N.J.S.A. 2C:2-2(c)(1). Rather, we conclude that the requirement of culpability must be knowingly. See N.J.S.A. 2C:2-2(c)(3) cf. State v. Parsons, supra, 270 N.J.Super. at 224, 636 A.2d 1077 (prescribed requirement of culpability is reckless); State v. Moll, supra, 206 N.J.Super. at 260, 502 A.2d 87 (since the word "purposefully" was used in the indictment to prescribe the requirement of culpability insofar as causing bodily injury the State must also prove beyond a reasonable doubt that defendant was aware of the attendant circumstances that the victim was a law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority).
[2] We believe the Model Jury Charge for N.J.S.A. 2C:12-1(b)(5)(a) should be modified to add a requirement for scienter. Accordingly, we refer this concern to the Committee on Model Jury Charges, Criminal, for further consideration.
[3] In fact, effective September 1, 1994, R. 1:8-7 was amended to include (b) which requires the trial judge, in all criminal cases, to conduct a charge conference on the record.