755 A.2d 596 (2000)
333 N.J. Super. 236
STATE of New Jersey, IN the INTEREST OF S.B., Juvenile-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 19, 2000.
Decided July 11, 2000.
*597 Ivelisse Torres, Public Defender, attorney for appellant (Paul M. Klein, Assistant Deputy Public Defender, of counsel and on the brief).
Andrew N. Yurick, Gloucester County Prosecutor, attorney for respondent State of New Jersey (Dianna Reed-Rolando, Assistant Prosecutor, on the brief).
Before Judges STERN, KESTIN and STEINBERG.
The opinion of the court was delivered by STEINBERG, J.A.D.
S.B., a juvenile, appeals from two adjudications of delinquency for offenses that would constitute aggravated assault under N.J.S.A. 2C:12-1(b)(5)(d) if committed as an adult. He also appeals from the imposition of a probationary sentence. We affirm in part, and modify in part.
Specifically, S.B. was charged with assaulting four teachers, Graham Hall, Nicholas Yates, John Schilling, and David Vignola, who had intervened to attempt to break up a fight between S.B. and another student. At the end of the State's case, the trial judge granted defendant's motion to dismiss the charge relating to Yates. At the conclusion of the trial, the judge found S.B. not guilty of assaulting Schilling, but found him guilty of assaulting Hall and Vignola. The judge sentenced S.B. to a one-year term of probation, and also imposed the appropriate statutory penalties and assessments.
According to the State's proofs, S.B. was a student at Monongahela Middle School in Deptford Township. On October 19, 1998, the students at the school were dismissed early due to a water main break. Hall, Schilling, and Maryann Brown, another teacher, were walking out of the school. Hall heard Brown say that there was a fight. The fight was between S.B. and another student. Hall and Schilling ran to the fight and separated the combatants.
*598 Hall testified that he grabbed the other student, T.D., and attempted to separate him from S.B. who was being held by Schilling. Hall was looking back over his shoulder and observed S.B. "coming back towards [T.D.] and that's when I was kicked in the left leg" by S.B. He said he felt the impact of the kick, but was not in any particular pain. He also testified that S.B. was very determined to get to T.D., that he was "crazed, kind of out of control". Hall was able to move T.D. from the area. On cross-examination, Hall conceded that he assumed S.B. intended to kick T.D., rather than him. Schilling also said on cross-examination that he thought S.B. was attempting to kick T.D., rather than Hall. He said he thought S.B. "just missed ... Hall was in the ... wrong place". Vignola also said that S.B. broke away from Schilling and Yates and "attempted to kick [T.D.] in the head as [T.D.] was bending over to pick up his books". However, "in reality, he had hit [Hall]". Yates also testified that S.B. attempted to kick T.D., rather than Hall. Schilling testified that he and Yates separated S.B. from T.D., taking S.B. to the ground. They let him up and allowed S.B. to retrieve his book bag. However, Schilling said S.B. began to run towards T.D. and attempted to kick him. Instead, S.B. kicked Hall. Schilling again intervened and "grabbed a hold of [S.B.], pulled him away".
S.B. continued to be aggressive. Vignola then came to Schilling's assistance. Ultimately, Yates, Vignola, and Schilling were able to move S.B. towards the entrance to the school. They took S.B. to the main office. S.B. again became aggressive and was shouting at Vignola. Vignola attempted to calm S.B. down. According to Schilling, S.B. "grabbed a hold of [a] picture to try to hit Mr. Vignola".
Vignola testified that he and Schilling attempted to separate S.B. from T.D., and they were able to escort S.B. into the building. He said S.B. "was still fighting and struggling to get away". They proceeded to the main office. According to Vignola, S.B. "erupted again". Vignola said S.B. "jumped up into my face and pushed me, and I put my hands up to stop him and pushed him away". He and Schilling attempted to put S.B. into a chair and S.B. grabbed a picture from the wall and attempted to "swing it around". Vignola said Schilling "intercepted [S.B.'s] hand before he hit me in the head with the picture, and the picture went flying".
On this appeal, S.B. raises the following arguments:
POINT I THE ADJUDICATION OF DELINQUENCY MUST BE REVERSED BECAUSE THE EVIDENCE DOES NOT SUPPORT A FINDING THAT THE JUVENILE COMMITTED AGGRAVATED ASSAULT.
POINT II THE FAMILY COURT JUDGE ERRED BY NOT ADJOURNING THE DISPOSITION OF S.B.'S CASE FOR 12 MONTHS PURSUANT TO N.J.S.A. 2A:4A-43b(1).
Initially, we point out that our scope of appellate review of the factual determinations of the trial judge is extremely narrow. We must review the record not from the point of how we would decide the matter if we were the trial judge. State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 161, 199 A.2d 809 (1964). We must give deference to those findings of the trial judge which are substantially influenced by his or her opportunity to hear and see the witnesses and have the "feel" of the case, which we do not enjoy upon appellate review. Ibid. Thus, we must determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record as a whole. Locurto, supra, 157 N.J. at 471, 724 A.2d 234; Johnson, supra, 42 N.J. at 162, 199 A.2d 809. If we are satisfied that the findings and result meet this criterion, *599 our task is complete, and we may not disturb the result, even though we may feel we may have reached a different conclusion. Ibid. Only if we are thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interest of justice demand intervention and correction may we appraise the record as if we are deciding the matter at inception and make our own findings and conclusions. Ibid. On the other hand, a trial judge's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference. Manalapan Realty v. Township Comm., 140 N.J. 366, 378, 658 A.2d 1230 (1995); Zahner v. Pathmark Stores, Inc., 321 N.J.Super. 471, 476, 729 A.2d 478 (App.Div.1999); S.P. v. Collier High Sch., 319 N.J.Super. 452, 466, 725 A.2d 1142 (App.Div.1999). In that context, we review S.B.'s contention that the record does not contain sufficient credible evidence to support the trial judge's determination that he committed an aggravated assault on Hall or Vignola.
A person is guilty of aggravated assault if he commits a simple assault upon any "teacher or other employee of a school board while clearly identifiable as being engaged in the performance of his duties or because of his status as a member or employee of a school board". N.J.S.A. 2C:12-1(b)(5)(d). A person is guilty of simple assault if he "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another". N.J.S.A. 2C:12-1(a)(1). "Bodily injury" is defined as "physical pain, illness or any impairment of physical condition". N.J.S.A. 2C:11-1(a). We have carefully considered the record and conclude that there was more than ample evidence for the judge to determine that when S.B. grabbed the picture in Vignola's office and swung it around towards Vignola, S.B. intended to strike Vignola and cause him pain. We recognize that to be guilty of an attempt a defendant's conduct must be purposeful. State v. Robinson, 136 N.J. 476, 485, 643 A.2d 591 (1994). In other words, it must be defendant's purpose to cause a particular result. Id. at 485-56, 643 A.2d 591. Here, the record clearly supports the judge's ultimate conclusion that S.B.'s purpose, when he swung the picture, was to cause bodily injury to Vignola. Accordingly, we affirm the adjudication regarding the aggravated assault upon Vignola.
We next consider the adjudication regarding S.B.'s kicking Hall. The judge was satisfied that S.B. intended to kick the other student, but, since he actually kicked Hall, he "could be considered reckless". Again, giving substantial deference to the factual determinations made by the judge, we conclude that the record supports the judge's factual conclusion that S.B. committed a simple assault upon Hall. However, we disagree with the judge's legal conclusion that the simple assault was elevated to aggravated assault by virtue of Hall's status as a teacher.
We recognize that the evidence led to the inescapable conclusion that S.B. intended to kick the other juvenile, rather than Hall, and the judge so found. Regarding the charge of simple assault, which is a predicate to a finding of guilt of aggravated assault upon a teacher, that fact is of no consequence. The principle of "transferred intent" makes an actor criminally responsible for the result of his conduct, even though the person injured is not his intended victim. N.J.S.A. 2C:2-3(d) specifically provides that a person is not relieved of criminal responsibility "for causing a result if the only difference between what actually occurred and what was designed, contemplated or risked is that a different person or property was injured or affected or that a less serious or less extensive injury or harm occurred". Thus, our Supreme Court has held that a defendant may be convicted for purposeful or knowing homicide of an unintended victim based upon his intent to knowingly or purposely kill someone else. State v. Worlock, 117 N.J. 596, 615-17, 569 A.2d 1314 (1990). Here, defendant is not absolved of *600 criminal responsibility simply because his intended victim was the other juvenile, rather than Hall.[1] However, since S.B. did not have the specific intent to commit an assault upon a teacher clearly identifiable as being engaged in the performance of his duties, or because of Hall's status as a teacher, his adjudication of delinquency on the charge of aggravated assault must be modified to an adjudication for an offense that would constitute simple assault, if committed by an adult, as a lesser included offense. See State v. Washington, 60 N.J. 170, 173, 287 A.2d 1 (1972); State v. Alexander, 215 N.J.Super. 522, 530-31, 522 A.2d 464 (App.Div.1987).
We now turn to S.B.'s contention that there was insufficient evidence to support a finding, beyond a reasonable doubt, that Hall suffered bodily injury. We disagree. Hall testified that S.B. kicked him in the calf. He conceded that he suffered no abrasions. When asked if he suffered any injuries, the following colloquy ensued:
Hall: No. No. But I mean, it wasI could feel it. It was
Defense Attorney: Was it painful?
Hall: Not particularly, no. Because at the same time I was still moving.
On cross-examination, Hall stated he "could still feel the kick" that he "felt the impact of the kick, but [was not] in any particular pain". On cross-examination, Vignola stated that after he was kicked, Hall "went down and grabbed his leg". The term "pain" is difficult to quantify. It is defined in Webster's Ninth New Collegiate Dictionary 846 (9th ed.1984), as "localized physical suffering associated with a bodily disorder (as a disease or an injury)." Initially, we note that Hall did not say he did not suffer pain. He said "it was not particularly painful" (emphasis added). Not much is required to show bodily injury. N.B. v. T.B., 297 N.J.Super. 35, 43, 687 A.2d 766 (App.Div.1997). A "stinging sensation" suffered by the victim as he was struck by defendant in the face with a backward motion of his open hand, during a verbal confrontation, was held sufficient to constitute pain. State v. Downey, 242 N.J.Super. 367, 371, 576 A.2d 945 (Law Div.1988). We conclude that physical discomfort, or a sensation caused by a kick during a physical confrontation, as well as pain, as that word is commonly understood, is sufficient to constitute bodily injury for purposes of a prosecution for simple assault. Indeed, here Hall did not say he did not suffer pain, he said he did not suffer any "particular" pain.
Alternatively, S.B. contends that even if there was sufficient evidence to support an adjudication for a simple assault, the evidence was insufficient to support an adjudication for aggravated assault. We agree. As previously noted, a simple assault under N.J.S.A. 2C:12-1(a)(1) is elevated to an aggravated assault if it is committed upon a teacher "while clearly identifiable as being engaged in the performance of his duties or because of his status". N.J.S.A. 2C:12-1(b)(5)(d). While the principle of "transferred intent" renders S.B. criminally responsible for a simple assault upon Hall, even though the other juvenile was S.B.'s intended victim, that principle has no applicability here in considering the charge of aggravated assault. That is because the only intent that is transferred is the intent to commit a simple assault. On the other hand, the principle of transferred intent cannot be utilized to elevate the offense to aggravated assault. For example, to constitute an aggravated assault upon a law enforcement officer, contrary to N.J.S.A. 2C:12-1(b)(5)(A), the State must prove, beyond a reasonable doubt, in addition to the other elements of the offense, that defendant *601 knew the victim was a law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority. State v. Green, 318 N.J.Super. 361, 375-76, 724 A.2d 254 (App. Div.1999), aff'd o.b., 163 N.J. 140, 747 A.2d 1234 (2000); State v. Parsons, 270 N.J.Super. 213, 224, 636 A.2d 1077 (App.Div. 1994); State v. Moll, 206 N.J.Super. 257, 260, 502 A.2d 87 (App.Div.), certif. denied, 103 N.J. 498, 511 A.2d 670 (1986).
Likewise, we conclude that a simple assault can only be elevated to an aggravated assault upon a teacher if the actor knowingly assaulted a teacher. The State must prove beyond a reasonable doubt, in addition to the other elements of the offense, that the actor knew the person he was assaulting was engaged in the performance of his duties or knew of his status as a teacher, or was aware of a high probability that he was, in fact, assaulting the teacher, rather than the other juvenile.
We reject the State's contention that since recklessness will support a conviction for simple assault, it is also sufficient to elevate the simple assault to aggravated assault. The requisite level of culpability is knowing conduct. See State v. Green, supra, 318 N.J.Super. at 376, 724 A.2d 254 (State must prove beyond a reasonable doubt that defendant knew the victim was a law enforcement officer acting in the performance of his duties, while in uniform or exhibiting evidence of his authority); State v. Moll, supra, 206 N.J.Super. at 260, 502 A.2d 87 (to support a conviction for aggravated assault upon a law enforcement officer, the State must prove beyond a reasonable doubt that the actor knew the victim was a law enforcement officer acting in the performance of his duties while in uniform or exhibiting evidence of his authority), cf. State v. Parsons, supra, 270 N.J.Super. at 224, 636 A.2d 1077 (in a prosecution for aggravated assault upon a law enforcement officer State need only prove beyond a reasonable doubt that defendant was reckless in that he consciously disregarded a substantial and unjustifiable risk that he was assaulting a law enforcement officer acting in the performance of his duties).
Finally, we consider S.B.'s contention that the judge erred by not adjourning the disposition of his case for twelve months. N.J.S.A. 2A:4A-43(b)(1) authorizes a judge to adjourn formal entry of a disposition of a case involving a juvenile for a period not to exceed twelve months for the purpose of determining whether the juvenile can make a satisfactory adjustment, and to ultimately dismiss the complaint if during the period of the continuance the juvenile does, in fact, make such an adjustment. The judge considered the application, but denied it concluding that it would be an inappropriate disposition in light of the fact that the incident took place in school, against teachers, feeling it would be the wrong message to send to other students that an assault on a teacher in school results in an ultimate dismissal of the charge. We cannot conclude that the judge mistakenly exercised his discretion in arriving at that determination. To hold otherwise would result in our substituting our judgment for that of the trial judge. That we cannot do. We must defer to the trial judge who has the feel for the case, and we may only intervene if we are satisfied that the sentence imposed represents an abuse of discretion. State v. Gardner, 113 N.J. 510, 516, 551 A.2d 981 (1989).
Affirmed, as modified and remanded to the Chancery Division, Family Part, to amend the judgment, consistent with this opinion.
NOTES
[1] We note also that the judge found S.B. guilty, concluding that he was reckless in kicking Hall rather than his intended victim. Since recklessness suffices to support a conviction of N.J.S.A. 2C:12-1(a)(1), the judge was correct in concluding that there was sufficient proofs to support an adjudication of S.B., even though Hall was not the intended victim, on a theory of recklessness.