# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1943-17T2

A.M.V.,

      Plaintiff-Respondent,

v.

F.T.,

      Defendant-Appellant.

_____

Submitted December 5, 2018 – Decided  September 18, 2019

Before Judges Fuentes and Accurso.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Gloucester County, Docket No. FV-08-0599-18.

Law Offices of Andrew N. Yurick, attorneys for appellant (Nicholas J. Yurick, on the briefs).

Raymond T. Dorizio, attorney for respondent.

The opinion of the court was delivered by

FUENTES, P.J.A.D.

Defendant F.T.[1] appeals from a final restraining order (FRO) issued by the Chancery Division, Family Part under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to 2C:25-35. The Family Part found defendant physically assaulted plaintiff A.M.V. while engaged in a verbal dispute. N.J.S.A. 2C:25-19(a)(2). Defendant argues plaintiff failed to prove, by a preponderance of the competent evidence, that he committed the predicate act of simple assault against defendant, as defined under N.J.S.A. 2C:12-1a(1). Defendant also argues the trial judge issued the FRO without making the findings required under the second prong of the two-prong paradigm this court established in Silver v. Silver, 387 N.J. Super. 112, 125-27 (2006).

Plaintiff argues her testimony at the FRO hearing established, by a preponderance of the evidence, that defendant physically assaulted her while under the influence of alcohol. Although plaintiff concedes the trial judge did not specifically mention or apply the two-prong paradigm in Silver, she argues the record shows the issuance of the FRO was patently necessary to prevent defendant from having any future contacts with plaintiff and her eleven-year-

---

[1] As required by Rule 1:38-3(d)(9), we use initials to protect the privacy of the parties and the confidentiality of these proceedings.

old son, thereby avoiding the likelihood of further contacts with defendant and the prospect of future harm.

After reviewing the record developed by the parties before the Family Part and mindful of prevailing legal standards, we affirm.

I

At all times relevant to this case, defendant and plaintiff were involved in a romantic relationship and resided in the same apartment with plaintiff's eleven-year-old son from a previous relationship. At approximately 11:23 p.m. on November 11, 2017, plaintiff called the West Deptford Police Department to report defendant had physically assaulted her. The police officers who responded to the scene spoke to each party separately and thereafter arrested defendant and charged him with simple assault.

Plaintiff also filed a civil complaint under the PDVA and obtained an ex parte temporary restraining order (TRO) from the West Deptford Municipal Court at 2:13 a.m. on November 12, 2017. See N.J.S.A. 2C:25-28(a). The TRO enjoined defendant from having any contacts with plaintiff or her son pending the outcome of a final hearing before the Chancery Division, Family Part, in Gloucester County on November 16, 2017. The parties appeared before the Family Part on that day; neither one was represented by counsel.

A-1943-17T2

Plaintiff testified that at approximately eight o'clock in the evening on November 11, 2017, she picked up her son from her mother's house and took him "to see the roller derby." At approximately 10:45 p.m., she received a text message from defendant "saying he was pretty f'ed up [sic] I didn't let him know that we were going to be staying out all night." Plaintiff claimed defendant wanted to know her whereabouts and what time she planned to return to the apartment. In response to the text, plaintiff told defendant she did not intend to stay out all night.

While in the car on her way to the apartment, plaintiff testified she told her son "not [to] say anything . . . [nor] make any noise just go straight to his room and lay down." When plaintiff arrived at her apartment with her son, she found the door had been chain-locked. She testified that she began "to bang on the door and say, I have him [her son] let me in." Plaintiff testified defendant was "already sleeping and reluctant" to let her and her son go inside the apartment. According to plaintiff, when she was finally able to open the door, her son walked straight to his room without saying a word. At this point, plaintiff testified defendant "started a verbal argument." She also noted that defendant had an odor of alcohol emanating from his person and deduced he had been drinking before she arrived.

A-1943-17T2

At this point, plaintiff testified defendant became verbally abusive. This verbal assault "escalated very, very quickly. He was yelling obscenities and bad things about . . . my son and blaming my son for all the problems with our relationship[.]" According to plaintiff, she became "nervous" when defendant came out of the bedroom he shared with her and headed in the direction of her son's room. This is when plaintiff decided to physically intervene. She provided the following account of what transpired next:

> So I did pull him by the back of his sweatshirt to be able to get in front of him and we were arguing and I was facing him and that's when he - - we just were arguing and I told him not to touch my son, not to go near my son and he shoved me so forcefully that I hit the wall and the door to my son's room. And my son's room['s] door was open. He witnessed this entire thing and I instructed my son to lock the door and no matter what happens - - [.]

Defendant testified in his own defense. He admitted to locking the apartment's entrance door with the interior chain-lock "because I really didn't expect her to come home that night since I didn't hear from her all day." Defendant also admitted he drank "three beers" before plaintiff and her son returned to the apartment. Defendant testified that plaintiff started to argue with him about her son. However, instead of arguing with her, he walked away and went to the bedroom "to go back to sleep." According to defendant, plaintiff

5

was undaunted by this gesture and followed him into the bedroom to continue the argument.

When he realized he was not "going to be able to lay back down and go to sleep," defendant claimed he got up, put on his pants, grabbed his shirt, and walked toward the living room. Plaintiff followed him into the living room and continued to argue about her son. It was at this point that defendant claimed he told plaintiff: "I do not want her son here anymore and he's not accepted here anymore because he's disrespectful and doesn't give a damn about myself or us because he disrespected her several times too[.]"

According to defendant, as he and plaintiff were arguing, the boy "opened the door, came out of his room, [and] started screaming. Defendant claimed the boy had "something in his hand . . . so I turned my attention to him." At this point, defendant testified that plaintiff "got in the middle of us." We discern this to mean that plaintiff placed herself physically between defendant and her eleven-year-old son. Defendant admitted he "shoved" plaintiff over the sectional. He also claimed she "threw herself into the doorway and landed on the floor."

 A-1943-17T2

## II

Based on these facts, the Family Part judge stated: "I'm satisfied that [defendant was] in fact intoxicated. I'm satisfied likewise that [defendant] did in fact assault[] [plaintiff]. I'm going to enter a final restraining order." The judge did not elaborate beyond these cryptic remarks.

In this appeal, the parties are represented by counsel. Defendant argues the record developed before the Family Part does not support a finding that defendant committed the predicate act of simple assault as defined in N.J.S.A. 2C:12-1a(1), which provides: "A person is guilty of assault if he: (1) Attempts to cause or purposely, knowingly or recklessly causes bodily injury to another[.]" N.J.S.A. 2C:11-1(a) defines: "bodily injury" as "physical pain, illness or any impairment of physical condition[.]" Defendant emphasizes that "[d]uring the entire hearing, there is no testimony regarding any type of physical pain, illness, or impairment experienced by . . . [p]laintiff."

Ordinarily, our standard of review as an appellate court requires us to defer to a trial judge's factual findings, especially when those findings are influenced by the judge's unique opportunity to hear and see the witnesses and acquire a "feel" of the case. State v. Johnson, 42 N.J. 146, 161 (1964). Here, the record is undisputed that the trial judge did not make specific findings

concerning the elements of "bodily injury" as codified under N.J.S.A. 2C:11-1(a). Furthermore, plaintiff concedes she did not specifically testify that she felt pain as a result of defendant shoving her "so forcefully that I hit the wall and the door to my son's room."

Plaintiff nevertheless argues that the record of the FRO hearing provides a reasonable basis for this court to infer plaintiff suffered some measure of pain as a consequence of defendant's action. In support of this argument, plaintiff cites State ex rel. S.B., 333 N.J. Super. 236, 239 (App. Div. 2000), in which the Family Part adjudicated a juvenile delinquent based on an offense that if committed by an adult would constitute aggravated assault under N.J.S.A. 2C:12-1b(5)(d). In S.B., four middle school teachers intervened to stop a physical altercation between the juvenile and another student. Ibid. The trial judge found the juvenile guilty of physically assaulting two teachers. Ibid. One of these two teachers testified that when the juvenile kicked him in the leg, he felt the "impact of the kick but was not in any particular pain." Id. at 239-240. The other teacher testified the juvenile "jumped up into my face and pushed me, and I put my hands up to stop him and pushed him away." Id. at 240. As he and the other teacher attempted to put the juvenile into a chair, the juvenile "grabbed a picture from the wall and attempted to swing it around." Ibid.

On appeal, the juvenile argued there "was insufficient evidence to support a finding, beyond a reasonable doubt," that the first teacher, whom the juvenile kicked in the leg, "suffered bodily injury" as defined in N.J.S.A. 2C:11-1(a). S.B., 333 N.J. at 243. This court rejected this argument and upheld the adjudication of delinquency. Id. at 244. With respect to the element of "pain," this court held that:

> physical discomfort, or a sensation caused by a kick during a physical confrontation, as well as pain, as that word is commonly understood, is sufficient to constitute bodily injury for purposes of a prosecution for simple assault. Indeed, here [the teacher] did not say he did not suffer pain, he said he did not suffer any "particular" pain.
>
> [Ibid.]

Here, we apply the common sense approach our colleagues applied in S.B. to uphold the trial judge's finding that plaintiff proved, by a preponderance of the evidence, that defendant committed the predicate offense of simple assault. In her description of the confrontation she had with defendant, plaintiff stated defendant was inebriated and yelling obscenities when he headed toward her eleven-year-old son's bedroom demanding that the child leave the apartment that night. When plaintiff placed herself between defendant and her son's bedroom,

9

defendant testified he "shoved" her with sufficient force to knock over the sectional.

Based on this record, we conclude that plaintiff experienced a measure of pain as a direct result of defendant's unambiguously violent physical act against her. We emphasize, however, that pursuant to Rule 1:7-4(a) "a judge "shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury[.]" [(Emphasis added)]. See also State v. Locurto, 157 N.J. 463, 470 (1999). This mandatory responsibility of the judge is especially important in a PDVA hearing in which the parties are not represented by counsel. Under these circumstances, the judge is often required to question the parties directly to determine whether there is a factual basis for relief, while at all times remaining impartial and vigilant to avoid appearing to favor any party in the case. See DeNike v. Cupo, 196 N.J. 502, 507 (2008).

Although the judge's failure to perform this critically important function proved to be legally inconsequential in this case, we are compelled to point out this dereliction directly undermines our institutional role as an intermediate

A-1943-17T2

appellate court. As then Judge Long[2] eloquently noted nearly thirty years ago: "Failure to perform the fact-finding duty constitutes a disservice to the litigants, the attorneys and the appellate court.'" Salch v. Salch, 240 N.J. Super. 441, 443 (App.Div.1990), (quoting Curtis v. Finneran, 83 N.J. 563, 569-570 (1980)).

Finally, we address defendant's argument based on the trial judge's failure to apply the two-prong analytical paradigm this court established in Silver to determine whether plaintiff was entitled to a FRO. Under Silver, a trial judge must first determine "whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19a has occurred." 387 N.J. Super. at 125. If a plaintiff meets this burden of proof, the judge must determine "whether the court should enter a restraining order that provides protection for the victim." Id. at 126. However, as this court recently reaffirmed, "[w]hen the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO 'is most often perfunctory and self-evident.'" A.M.C. v. P.B. 447 N.J. Super. 402, 417 (App. Div. 2016), (quoting Silver, 387 N.J. Super. at 127).

---

[2] Governor Whitman appointed Judge Long to the Supreme Court on June 17, 1999. She served honorably as an Associate Justice until her retirement in 2012.

Here, defendant's conduct against plaintiff was unmistakably violent. Although the trial court failed to conduct the required analysis, we are satisfied the record supports the issuance of the FRO.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1943-17T2