# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3394-22

STATE OF NEW JERSEY IN
THE INTEREST OF M.G.[1]

_____

Submitted May 30, 2024 – Decided August 8, 2024

Before Judges Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Family Part, Union County, Docket No. FJ-20-0307-23.

James P. Nolan, Jr. and Associates, LLC, attorneys for appellant (James P. Nolan, Jr., on the brief).

Milton S. Liebowitz, Assistant Prosecutor, attorney for respondent (William A. Daniel, Union County Prosecutor, attorney; Milton S. Liebowitz, of counsel and on the brief).

PER CURIAM

M.G., a juvenile, appeals her trial adjudication of delinquency for aggravated assault as an accomplice in an altercation at her high school. She

---

[1] We use initials to protect the privacy of the victim and the other underaged participants in the physical altercation. See R. 1:38(d)(5).

contends the prosecutor failed to prove the culpable mental state needed to establish accomplice liability, and that the victim's injuries did not rise to the level of "significant bodily injury" as to warrant an adjudication for third-degree aggravated assault. She also contends the disposition imposed on her adjudication is excessive. After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm the adjudication of delinquency and disposition.

## I.

The fight giving rise to this juvenile prosecution occurred on January 18, 2023. On February 2, 2023, M.G. was charged by a juvenile delinquency complaint with an offense that, if committed by an adult, would constitute third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). M.G. pled not guilty and a bench trial was held on May 16, 2023. On June 13, 2023, the Family Part entered an order adjudicating her delinquent and imposed disposition.

We discern the following pertinent facts from the trial record. M.G. was in the girl's restroom at her school along with other students, M.R., N.L., S.M., and M.C. M.R.—the victim—was in the "big stall," while the other students were standing outside of it. N.L. and M.C. were angry because they could not use the big stall. N.L. climbed on top of a sink and into the big stall. Once

inside the stall, N.L. attacked M.R.  Eventually, the fight spilled out into the main area of the restroom.  N.L. got on top of M.R. and hit her.  While N.L. was on top of M.R., S.M. went over and kicked M.R.

At some point during the fight, M.R. was able to get on top of N.L.  At that juncture, M.G. pushed M.R. off N.L., telling M.R. something along the lines of "get off of her.  Stop.  Get off.  Get off.  You're not choking her."  As a result of M.G.'s physical intervention, N.L. was able to get back on top of M.R. and continue to assault her.  Eventually, the fight moved into the hallway.

During the altercation, N.L. slammed M.R.'s head against the bathroom stall door, the bathroom wall, and against lockers in the hallway.  N.L. also repeatedly punched M.R. in the face, in her back, and pulled M.R.'s hair.  S.M., M.C., and M.G. recorded the altercation on their smartphones.  S.M.'s recordings were introduced into evidence.

After the fight was over, M.R. went to the nurse's office.  School resource officer Richard Hernandez observed M.R. and testified that she "was very upset, disheveled, [and] her hair was a mess and she was also crying."  He recalled seeing a bite mark on one of M.R.'s arms.

M.G. testified in her own defense.  She claimed N.L. and M.R. were arguing before she entered the bathroom and that she did not know what the

A-3394-22

argument was about. M.G. claimed she was not friendly with either N.L. or M.R. She claimed she did not hit, strike, or choke anyone during the fight. M.G. also claimed that when she saw M.R. get on top of N.L. and put N.L. in a choke hold, she touched M.R.'s shoulder and told her to get off N.L. and stop choking her. M.G. testified that she did not intend to help N.L. gain an advantage and resume the assault on M.R. Instead, M.G. testified she intended "[t]o break up the fight."

On cross-examination, M.G. stated that she had no reason to get involved in the fight. She remained in the restroom throughout the altercation "because I was already in a video and I wanted to take a video as transparency to any school official who asked me what had happened in the bathroom." She claimed she tried to turn over the video, but the school principal made her delete it.

M.G. further testified that she wanted to stop the fight because "they were hurting each other," but admitted she did not get a teacher. M.G. testified she told N.L. to "relax," but admitted she did not say anything while N.L. picked M.R. up by her hair and slammed her against the bathroom wall. When asked why she did not tell N.L. to stop, M.G. stated, "I wasn't thinking clear in that moment." Despite her claim that she intervened because M.R. had placed N.L.

in a choke hold, M.G. acknowledged N.L. never said "I can't breathe" and did not appear to be gasping for air.

Based on the foregoing testimony and video recording of the altercation, the trial judge found the State proved beyond a reasonable doubt that M.G. aided and abetted the assault against M.R. He rejected the defense contention that M.G. was a "Good Samaritan." The judge imposed a disposition of twelve months of probation, anger management training, attendance at school with no unexcused absences, forty hours of community service, restitution in an amount to be determined, a curfew to be determined by probation if necessary, DNA and fingerprint surrender, and that M.G. was to have no intentional contact with the victim. The judge further ordered that upon successful completion of probation, M.G. may apply for a deferred disposition. See N.J.S.A. 2A:4A-43(b)(1).

This appeal follows. M.G. raises the following contentions for our consideration:

> [M.G.] SHOULD HAVE BEEN ACQUITTED ON ALL COUNTS BECAUSE THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.
>
> A. M.G. cannot be considered an accomplice under [N.J.S.A.] 2C:2-6(C) because she did not have the requisite purposeful intent.

A-3394-22

B. M.G. cannot be charged with aggravated assault as the injuries from the altercation did not rise to the level of "significant."

C. Finding M.G. guilty of aggravated assault is antithetical to the legislative intent of § 2C:2-6 and § 2C:12-1[(b)](7).

D. The [t]rial [c]ourt erred in its assumption that M.G. knew her actions would result in N.L. gaining the upper hand in the fight.

E. The [t]rial [c]ourt subjected the [a]ppellant to an unduly harsh punishment.

## II.

We begin our analysis by acknowledging the procedural and substantive legal principles governing this appeal. When reviewing the disposition after a bench trial, appellate courts "must give deference to those findings of the trial judge which are substantially influenced by his or her opportunity to hear and see the witnesses and have the 'feel' of the case, which [appellate courts] do not enjoy upon appellate review." State ex rel. S.B., 333 N.J. Super. 236, 241 (App. Div. 2000). Relatedly, appellate courts

> do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence. [Appellate courts] are not in a good position to judge credibility and ordinarily should not make new credibility findings. However, [appellate] review of the sufficiency of the facts to satisfy an applicable legal standard is a question of law.

6

> [Mountain Hill, L.L.C. v. Twp. of Middletown, 399
> N.J. Super. 486, 498-99 (App. Div. 2008) (internal
> quotation marks and citations omitted).]

Turning to substantive legal principles, an accomplice to a crime is legally responsible for the conduct of the person who physically commits the crime. N.J.S.A. 2C:2-6.  N.J.S.A. 2C:2-6(c), provides that:

> A person is an accomplice of another person in the commission of an offense if:
>
> (1) With the purpose of promoting or facilitating the commission of the offense; he
>
> . . . .
>
> (b) Aids or agrees or attempts to aid such other person in planning or committing it.

To be found guilty as an accomplice, a defendant must not only share the same intent as the principal who commits the crime, but also must "'at least indirectly participate[] in the commission of the criminal act.'"  State v. Bielkiewicz, 267 N.J. Super. 520, 528 (App. Div. 1993) (quoting State v. Fair, 45 N.J. 77, 95 (1965)).

A person is guilty of aggravated assault if he or she "[a]ttempts to cause significant bodily injury to another or causes significant bodily injury purposely or knowingly or, under circumstances manifesting extreme indifference to the

value of human life recklessly causes such significant bodily injury." N.J.S.A. 2C:12-1(b)(7). Accordingly, for a juvenile to be adjudicated delinquent as an accomplice to an aggravated assault, the State must prove he or she (1) acted "[w]ith the purpose of promoting or facilitating" the aggravated assault; and (2) "[a]id[ed] or agree[d] or attempt[ed] to aid [the principal] in planning or committing" the offense. N.J.S.A. 2C:2-6(c)(1)(b).

## III.

Applying the foregoing general principles to the present matter, we first address M.G.'s contention the trial judge's finding was against the weight of the evidence. M.G. argues she lacked the requisite intent and thus cannot be adjudicated for aiding and abetting N.L. The gravamen of the defense argument, at both the trial court level and on appeal, is that she was not an accomplice to the assault, but rather was only trying to prevent either combatant from getting injured.

As we have noted, we defer to a judge's bench trial findings so long as they are supported by credible evidence in the record. An actor's intent is a state of mind inferred from attending circumstances. As explained in the Criminal Model Jury Charges used in adult prosecutions, an actor's purpose is a "condition[] of the mind which cannot be seen and can only be determined by

8

inferences from conduct, words or acts." Model Jury Charges (Criminal), "State of Mind" (approved Jan. 11, 1993) ("A state of mind is rarely susceptible of direct proof, but ordinarily can be inferred from the facts."). Said another way, a state of mind is rarely susceptible of direct proof but must ordinarily be inferred from the facts. See State v. Canfield, 470 N.J. Super. 234, 328 (App. Div. 2022).

Here, the testimony and video evidence show M.G. did not stop N.L. from continuing to assault M.R., did not tell N.L. to stop, and did not seek help or assistance from a teacher. Rather, she electronically recorded the assault. Those facts alone, while relevant to M.G.'s state of mind, would not be sufficient to prove beyond a reasonable doubt the mental culpable state needed to establish accomplice liability. Importantly, however, M.G. physically pushed M.R. at a critical stage of the fight, enabling N.L. to once again gain the upper hand and continue the assault.

That physical touching shows M.G. was not just a bystander. The trial judge acted well within his factfinding prerogative in inferring from the nature and timing of M.G.'s physical intervention that M.G. pushed M.R. with the purpose to aid N.L. during the ongoing assault.

9

We likewise reject M.G.'s contention that the trial judge's finding is antithetical to N.J.S.A. 2C:2-6 and N.J.S.A. 2C:12-1(b)(7) because the Legislature could not have intended to hold someone who tries to stop a crime culpably responsible for the crime they are attempting to stop. We agree that as a matter of law, as well as common sense, a person who attempts to stop an ongoing crime is not an accomplice to that crime. M.G.'s argument nonetheless fails because the trial judge rejected her claim that she was acting as a "Good Samaritan." The judge found her exculpatory version was not credible and that "there was nothing in the record to suggest she wanted to stop the fight." The trial judge again acted well within his factfinding prerogative in rejecting M.G.'s "Good Samaritan" argument and self-serving testimony. We thus have no basis upon which to overturn the judge's finding, which is based on credible evidence in the record and his opportunity to observe M.G.'s testimony firsthand.

IV.

We turn next to M.G.'s argument the State failed to prove the victim suffered significant bodily injury as that term is defined in N.J.S.A. 2C:11-1(d). She argues there was no medical testimony and the only injury that was mentioned at trial was a bite mark on one of M.R.'s arms.

Significant bodily injury means "bodily injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses." N.J.S.A. 2C:11-1(d). We agree with M.G. that the State's evidence fails to establish that M.R. sustained any such significant bodily injury. However, the crime of third-degree aggravated assault does not require that the assault actually cause significant bodily injury. Rather, that crime can also be proved by showing the actor (and an accomplice) "[a]ttempts to cause significant bodily injury to another." N.J.S.A. 2C:12-1(b)(7) (emphasis added).

The trial proofs show M.R. was slammed against bathroom stalls, lockers, and walls, punched about her face and body repeatedly, kicked, dragged, and bitten, all in the presence of M.G. The violent and sustained nature of the assault amply establishes an attempt to inflict significant bodily injury. We note many of these assaultive acts occurred before M.G. pushed M.R. off N.L. In these circumstances, the trial judge properly determined that the State proved the elements of third-degree aggravated assault.

V.

We turn, finally, to M.G.'s contention the disposition imposed was excessive. Appellate review of a juvenile disposition is guided by the same general principles that apply to our review of sentences imposed in adult

11

prosecutions. We examine whether the trial judge followed lawful sentencing guidelines and determine whether the sentence imposed could have been reasonably reached based upon the evidence presented. See State v. Roth, 95 N.J. 334, 365-66 (1984). The scope of our review is limited, reflecting the deference we owe to the sentencing court. We are "bound to affirm a sentence, even if [we] would have arrived at a different result, as long as the trial court properly identifies and balances aggravating and mitigating factors that are supported by competent credible evidence in the record." State v. O'Donnell, 117 N.J. 210, 215 (1989) (citing State v. Jarbath, 114 N.J. 394, 400-01 (1989)); see Roth, 95 N.J. at 364-65.

Under the Juvenile Code, the judge must weigh the aggravating and mitigating factors set forth in N.J.S.A. 2A:4A-44(a). The judge must then place, on the record, the factual basis supporting the findings of the particular factors affecting the disposition, as well as the reasons for the disposition chosen, whether custodial or non-custodial. See N.J.S.A. 2A:4A-44(d)(1); see R. 5:24-3.

In this instance, the trial judge found aggravating factor G, "[t]he need for deterring the juvenile and others from violating the law;" aggravating factor J,

"[t]he impact of the offense on the victim or victims;" and aggravating factor K, "[t]he impact of the offense on the community." See N.J.S.A. 2A:4A-44(a)(1).

The judge also found mitigating factor G, "[t]he juvenile has compensated or will compensate the victim for the damage or injury that the victim has sustained, or will participate in a program of community service;" mitigating factor H, "[t]he juvenile has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present act;" mitigating factor I, "[t]he juvenile's conduct was the result of circumstances unlikely to recur;" and mitigating factor K, "[t]he juvenile is particularly likely to respond affirmatively to noncustodial treatment." See N.J.S.A. 2A:4A-44(a)(2).

M.G. does not challenge any of these specific findings, but rather claims the sentence is unnecessarily harsh. We disagree. The trial judge properly evaluated the relevant aggravating and mitigating factors and imposed an appropriate disposition in accordance with the law.

To the extent we have not specifically addressed them, any remaining contentions raised by M.G. lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3394-22