**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3345-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHARLES P. JAKUBOWSKI,

    Defendant-Appellant.

_____

Argued January 6, 2026 – Decided January 27, 2026

Before Judges Gilson and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 24-05-0554.

Emma W. Pallarino, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Emma W. Pallarino, of counsel and on the brief).

Josemiguel DeJesus Rodriguez, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Wayne Mello, Acting Hudson County Prosecutor, attorney; Josemiguel DeJesus Rodriguez, of counsel and on the brief).

PER CURIAM

Following a bench trial, defendant Charles P. Jakubowski appeals from the May 16, 2024 Law Division judgment of conviction finding him guilty of two counts of simple assault, N.J.S.A. 2C:12-1a(1). For the reasons that follow, we affirm.

I.

We derive the following facts from the largely undisputed record. On April 17, 2024, a Hudson County grand jury returned a superseding indictment charging defendant with two counts of fourth-degree aggravated assault of a law enforcement officer, N.J.S.A. 2C:12-1(b)(5)(a). The first count related to an alleged assault that defendant committed against F.A.,[1] a Bayonne Police Department (BPD) officer, and the second count related to an alleged assault committed against E.A., F.A's brother, who was also a BPD officer.

On May 7, 2024, the State filed an amended indictment, downgrading the charges to disorderly persons simple assault, N.J.S.A. 2C:12-1(a)(1). The next day, defendant filed a notice asserting a claim of self-defense, N.J.S.A. 2C:3-4.

---

[1] We use initials to protect the privacy interests of the victims and their families. See R. 1:38-3(a)(1).

A-3345-23

R. 3:12-1. On May 9, 2024, the criminal presiding judge held a case conference, confirming the case had a May 14, 2024 trial date.

The trial court presided over a two-day trial on May 15 and May 16, 2024. The State presented the testimony of D.A., E.A., F.A., an Emergency Medical Technician (EMT), and two other BPD police officers. Defendant also testified.

D.A. testified that during the evening of December 29, 2022, she was at a restaurant in Bayonne with her husband, E.A., and their son for a family party. E.A.'s twin brother F.A. was also at the party. After leaving the party, D.A. approached her vehicle in the restaurant's parking lot and was confronted by defendant about how she had parked. She stated that defendant was "screaming," "cursing," and "giving [her] the finger." Her brother-in-law, F.A., approached and told defendant to calm down. E.A. then walked over and told her "it[ i]s not worth it." After E.A. and F.A. walked away, defendant began "taunting [D.A.] to try to get out of the spot." E.A. and F.A. then returned and stood behind defendant's vehicle so D.A. could maneuver her vehicle from the parking spot and exit.

E.A. testified that the incident occurred at about 8:00 p.m. He had walked over to D.A.'s car to see what was happening. After he arrived at her vehicle, he did not understand why his wife told him "forget it, just get out of here," but

then he heard defendant had "started yelling at [him]" and stating, "get the f*ck out of there." E.A. recalled telling defendant to "just let [D.A.] leave."

After E.A. walked away, he could hear defendant "revving" his vehicle and "taunting" D.A. E.A. walked back and could see his brother standing behind defendant's vehicle so D.A. could exit the spot. Defendant's vehicle's back compartment window was open. E.A. joined F.A., who advised defendant to let D.A. leave and to stop moving his car. E.A. testified that defendant stated, "I do[ not] give a f*ck" and reversed his vehicle, hitting F.A.'s leg with the vehicle's bumper. After F.A. advised defendant to stop, E.A. witnessed defendant hit F.A. two more times with the vehicle. E.A. heard F.A. state, "That's it, [you are] under arrest[,] [w]e are both Bayonne police officers. Get out of the [vehicle]." They both walked to the vehicle's driver's side and F.A. instructed defendant to exit the vehicle because he was "under arrest." E.A. and F.A. were both off duty and wearing plain clothes.

After defendant asked why he was being arrested and refused to exit the vehicle, F.A. reached through the door to remove defendant. E.A. called 9-1-1 for "units to respond." Once defendant was outside the vehicle with "[h]is back . . . to his door," E.A. then observed F.A. trying to get defendant to turn around. Defendant resisted and started "throwing punches." F.A. "trie[d] to do a leg

4 A-3345-23

sweep to take [defendant] down to the ground to stop his behavior until officers [arrived]" because they "d[id not] have handcuffs." E.A. witnessed that defendant "pivoted," and F.A.'s right knee struck defendant "in the groin." Defendant then punched F.A. with a closed fist. After F.A backed away, defendant "punched" him again on "the back of his head." E.A. grabbed defendant by the shirt collar and defendant punched E.A. "with a closed fist in [the] face." Defendant's punch caused significant injury and E.A. was later taken by ambulance to the hospital. After the BPD officers arrived at the scene, defendant was arrested.

F.A. testified that once he entered the parking lot he heard an argument, realized his sister-in-law was involved, and heard defendant "verbally assault her." He told defendant D.A. was his sister-in-law and to "just let her go." F.A. asserted defendant said multiple times, "I guess we[ are] just going to have to fight." After telling defendant to get in his "car and leave," F.A. began walking back to his vehicle but realized defendant was backing up as D.A. was trying to exit the space. F.A. returned to stand behind defendant's vehicle so D.A. could leave and defendant "hit [him] with the car." F.A. felt the impact and stated, "You just hit me." After defendant tapped him two more times with the vehicle's bumper, F.A. said to E.A., "That[ is] enough, this is getting ridiculous."

A-3345-23

F.A. went to the driver's side of the vehicle and told defendant he was under arrest, and that they were police officers. He asserted defendant refused to exit the vehicle and began "pushing" and "flailing." After defendant was removed from the vehicle, F.A. tried to "separate [defendant's] legs" by "spin[ning] him around." Because defendant moved, F.A.'s "knee caught [defendant] in the groin area." Defendant then punched F.A. "twice in the back of [his] head." F.A. asserted he had jaw pain and "[d]eep tissue bruising" because of his injuries, which he later received treatment for.

The responding EMT testified that he provided E.A. with medical attention upon arriving at the scene. He observed E.A. had a "puncture wound on the right side of his face" with "minor bleeding."

The first responding BPD police officer (first officer) testified that he observed E.A., F.A., and defendant in the parking lot and they "were irate." The first officer explained he activated his body worn camera (BWC). He authenticated and described portions of the video played for the court. The first officer also confirmed taking pictures at the scene, including of E.A.'s injuries to his upper lip.

The second responding BPD police officer (second officer) testified that upon her arrival at the scene she witnessed the parties were separated. She

6

observed "defendant was pacing, speaking with a loud . . . voice, and seemed to be agitated." The second officer observed no injuries on defendant but nevertheless offered him medical attention.

Defendant testified that on the evening in question he was working for a nearby restaurant as a delivery person. After he arrived in the parking lot for work, he noticed it was full. He found a spot but observed a vehicle in the adjacent parking spot had pulled in with its "side tire . . . over into the empty spot." Because of the vehicle's parked location, defendant could only pull "three quarters of the way" into the open parking space. Defendant retrieved a food delivery and returned to his vehicle, but he "could not open [his passenger] door" to place the food on the passenger seat because the adjacent vehicle "was parked taking up two spots." Defendant reversed his vehicle "until [his] front tire was . . . at her back end" and could then open his passenger door to place the food inside. Defendant heard the adjacent vehicle beep and witnessed a woman walk toward it. Defendant turned to her and stated, "Yeah, nice parking job" and she responded, "F*ck you." After she said something about her husband, defendant retorted, "Your husband ain't gonna do sh*t." Defendant asserted that a man, later determined to be F.A., walked "aggressively" toward him with "fists clenched," came to his open driver's side, and started "slamming the door into

7

[defendant's] . . . leg." Defendant exited his vehicle and heard racial slurs directed at him. After he returned to his truck and attempted to leave, defendant noticed F.A., who had just confronted him, was standing behind his vehicle with E.A. Defendant flickered his vehicle lights and "reversed a couple steps." Defendant beeped his horn and moved the vehicle back "two or three times," and he heard a hand smack the back of his vehicle three times.

Defendant explained that F.A. came around and "ripped [him] out of" the vehicle and in response he defended himself by pushing F.A. away. Defendant stated F.A. extended his "right arm" toward defendant's head but it "graze[d] over the top of [his] head." Defendant stated he "hooked [F.A.], cracked him right in the face," and caused F.A. to "[fall] to the ground." Once F.A. stood back up near the vehicle, defendant "pushed him." Defendant asserted F.A. then "kneed him in the [groin]" and defendant "cracked him again . . . in the face." When E.A. tried to intercede and grabbed defendant's shoulder, defendant "cracked him[] and punched him . . . in the face," resulting in E.A. falling "down."

After the police arrived, defendant was arrested. Defendant stated he "told [his] story at least three times." He relayed that he asked why he alone was getting arrested, and a police officer told him, "[F.A. and E.A.] are police

officers. We[ are] police officers. We can do whatever we want." Later during cross-examination, defendant admitted making a mistake in his testimony and acknowledged after watching the BWC video that no officer made the statement. Defendant maintained he "d[id not] know" that F.A. and E.A. were police officers and they never "at any point . . . [said] they were police officers."

While defendant did not seek medical assistance at the scene, he explained his wrist began to hurt at BPD, and he went "immediately to [the] hospital" after his release. Defendant explained that a couple of months later a specialist diagnosed that a "part of the bone [in his wrist was] dying" from a "lack of blood flow."

During the trial, defense counsel argued the case involved self-defense. During summation, defense counsel stated, "I am asking Your Honor to find that [there] was self-defense." Defense counsel also contended that F.A. and E.A. did not identify themselves as law enforcement officers. In arguing for an acquittal, defense counsel emphasized that "when [defendant] punched [F.A. and E.A.] he was defending himself." The State responded in summation that defense counsel failed to timely file a "notice of a self-defense claim" and that "when considering all the testimony, . . . the photos, the videos, you should be convinced beyond a reasonable doubt that . . . defendant is guilty of two counts

of simple assault." It was undisputed that defense counsel filed "a notice of self-defense" on May 8, 2024, a day after the State filed an amended indictment downgrading both charges, and the court held a case conference on May 9.

After summations, the court issued an oral decision. The court found defendant guilty on count one, involving F.A., of the lesser included petty disorderly persons offense of mutual fighting under N.J.S.A. 2C:12-1(a)(1). It also found defendant guilty on count two of disorderly persons simple assault against E.A. While the court observed that D.A., E.A., F.A., and defendant testified credibly, it found the State impeached defendant's testimony regarding his assertion that he was told cops can do whatever they want. The court determined that it was "really irrelevant" that the victims were police officers. It explained the incident was an "escalat[ing] situation."

Regarding count one, the court found defendant "pushed [F.A.] and then punched him twice in the back of the head," which resulted in F.A. requiring medical attention. As to count two, the court found E.A. credibly testified defendant "hit[] him with a closed fist in his face," which resulted in E.A. requiring hospital treatment for his injuries. The court referenced defendant's testimony and found "most importantly" that he admitted to intentionally punching both F.A. and E.A. in the head area. Focusing on defendant's

testimony, the court found "it is clear" defendant, "with intent, did recklessly cause bodily injury to those two individuals." Defendant was sentenced and subject to fines and penalties.

On appeal, defendant raises the following argument:

> POINT I
>
> THE EVIDENCE DEMONSTRATED A RATIONAL BASIS FOR SELF-DEFENSE, WHICH [DEFENDANT] UNEQUIVOCALLY REQUESTED THE TRIAL COURT CONSIDER. THE TRIAL COURT FAILED TO ADDRESS THIS DEFENSE ENTIRELY, AND THEREFORE [DEFENDANT'S] CONVICTIONS MUST BE VACATED AND THE MATTER MUST BE REMANDED FOR A NEW TRIAL.

II.

"An appellate court must accept a trial court's factual finding if it is supported by sufficient credible evidence in the record." State v. Arthur, 184 N.J. 307, 320 (2005) (citing State v. Locurto, 157 N.J. 463, 472 (1999)). "Unlike an appellate court, a trial judge has the 'opportunity to hear and see the witnesses,' which includes observing gestures and facial expressions." State v. Yough, 208 N.J. 385, 403 (2011) (quoting Locurto, 157 N.J. at 471). We review issues of law de novo. State v. Hinton, 216 N.J. 211, 228 (2013); State v. Hubbard, 222 N.J. 249, 263 (2015). Questions of statutory or rule interpretation

present purely legal issues, which we also review de novo. See State v. Tate, 220 N.J. 393, 405 (2015).

A person commits simple assault if he or she "[a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." N.J.S.A. 2C:12-1a(1). Bodily injury means "physical pain, illness or impairment of physical condition." N.J.S.A. 2C:11-1(a). "[P]hysical discomfort, or a sensation caused by . . . a physical confrontation, as well as pain . . . is sufficient to constitute bodily injury for purposes of a prosecution for simple assault." State v. Stull, 403 N.J. Super. 501, 506 (App. Div. 2008) (quoting State ex rel. S.B., 333 N.J. Super. 236, 244 (App. Div. 2000)).

"Self-defense is an affirmative defense under the Criminal Code." State v. Bragg, 260 N.J. 387, 398 (2025). Pursuant to N.J.S.A. 2C:3-4(a), "the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion." "Self-defense requires an 'actual, honest, reasonable belief' by a defendant in the" need to use force. Bragg, 260 N.J. at 398 (quoting State v. Perry, 124 N.J. 128, 161 (1991)). "[O]nce evidence of self-defense is

introduced, the burden shifts to the State to disprove self-defense beyond a reasonable doubt." State v. Macchia, 253 N.J. 232, 252 (2023).

III.

Defendant contends the trial evidence supports a determination that he acted in self-defense and the court erred in failing to consider the affirmative defense after it was raised by defense counsel. After a review of the record, we discern no reason to disturb the court's decision that was issued after a thorough consideration of all the evidence and arguments.

We find defendant's arguments—that the trial court "erroneously failed to consider self-defense" and to make specific findings regarding the relevant self-defense factors—are unavailing. See Model Jury Charges (Criminal), "Justification-Self Defense In Self Protection (N.J.S.A. 2C:3-4)" (rev. Nov. 13, 2023).[2] We note defendant did not timely file his written notice of self-defense "[n]o later than seven days before the Initial Case Disposition Conference." R. 3:12-1. Therefore, it was within the court's discretion to decline to consider

---

[2] The Model Jury Charge for self-defense was revised after defendant's trial. See Sup. Ct. of N.J., Notice to the Bar: Updates to Model Criminal Jury Charges (Aug. 18, 2025); see also Model Jury Charges (Criminal), "Justification—Self Defense, In Self Protection (N.J.S.A. 2C:3-4)" (rev. Aug. 18, 2025).

13

defendant's late claim. However, a fair read of the court's decision demonstrates that it considered defendant's self-defense arguments.

We observe that during the trial the court did not prevent defendant from raising self-defense. The court's decision demonstrates it considered and focused on defendant's testimony surrounding self-defense. The court highlighted that defendant testified to the following: "he felt threatened"; his vehicle door was "slam[ed] . . . into [him]"; "[he] tried to hit the lock button" on his vehicle when he noticed a man approach a second time; he was "grab[bed] . . . aggressively" and "rip[ped] . . . out of the" vehicle; he was hit in the arm before he swung a punch; he tried to get his phone to "call the cops"; and he told his side of the "story" to an officer after he was arrested. In fact, the court referenced many of defendant's statements that defense counsel had argued during summation in support of self-defense and showed defendant "resorted to physical force only after he was attacked." Thus, we find no merit in defendant's contention that the court's failed to consider his claim of self-defense.

We are unpersuaded by defendant's argument that the court was required to address each self-defense factor in the model jury charge. "There are no instructions that a judge sitting as a jury gives to himself or herself." State v. Di Frisco, 118 N.J. 253, 276 (1990); see also State ex rel. L.W., 333 N.J. Super.

14

492, 499-500 (App. Div. 2000) (providing that "in a criminal . . . bench trial, a judge should only make specific findings of fact regarding elements of the [charge], but . . . need not articulate detailed, subjective analyses of factors"). We accept "[t]he general theory . . . that . . . judges are presumed to know the law." Di Frisco, 118 N.J. at 276. We also observe that the court found defendant was guilty of the lesser included petty disorderly persons offense of simple assault, which indicates that the court considered defendant's self-defense arguments. Notably, defense counsel did not specifically request the lesser included offense. We discern no error by the court in not addressing the model jury charge factors and specifically finding defendant failed to establish self-defense.

We also reject defendant's argument that "[w]hether the brothers identified themselves as officers was obviously the main issue in deciding self-defense." The State downgraded the original charges against defendant for aggravated assault against a "law enforcement officer acting in the performance of the officer's duties while in uniform or exhibiting evidence of authority," N.J.S.A. 2C:12-1b(5)(a). Because the charges were amended to simple assault, the court did not err in determining that "whether the individuals identified themselves as police officers in the beginning, at the end, or even at all [was]

15

really of no concern . . . and the [c]ourt d[id not] need to make those findings." The court was charged to decide two counts of simple assault, finding whether defendant "[a]ttempt[ed] to cause or purposely, knowingly or recklessly cause[d] bodily injury to another." N.J.S.A. 2C:12-1a(1).

Finally, there is no merit in defendant's argument that the court erred in not "conduct[ing] a charge conference pursuant to Rule 1:8-7(b)." Rule 1:8-7(b) states, "Prior to closing arguments, the court shall hold a charge conference on the record in all criminal cases" and "[a]t the conference the court shall advise counsel of the offenses, defenses and other legal issues to be charged and shall rule on requests made by counsel." (emphasis added). The Rule requires a conference for the parties to address the appropriate instructions to be given to a jury. See R. 1:8-7(b) (explaining that generally a charge conference shall be held on the record "[p]rior to closing arguments" to the jury). Defendant cites no authority to support his contention that the court in a bench trial must hold a charge conference before summations and rendering its decision. Also, defendant apparently never requested the court hold a charge conference.

Accordingly, we affirm the trial court's judgment of conviction, finding defendant guilty of two counts of simple assault. To the extent not addressed,

defendant's remaining contentions lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-3345-23